JUNE 1821.

Ford
vs
Philpot

bequest to him, that it was a lapsed bequest, and the slaves passed to *Samuel* under the bequest to him. 3. That manumission by will was not prohibited by the act of 1752, *ch.* 1, unless made during the last sickness of the testatrix. 4. That as *Philip* could not take the slaves, they passed to *Samuel*, who in due form manumitted them. That the bequest to *Philip* was in trust, which trust devolved upon *Samuel* to execute.

THE COURT OF APPEALS *affirmed* the judgment of the county court.

---

## COURT OF APPEALS, JUNE TERM, 1821.

### FORD, *et al.* vs. PHILPOT, *et al.*

*A mortgagor is considered the substantial owner of the property mortgaged, and he is capable of transferring or vesting his interest at his own pleasure so long as the right of redemption exists.*

*The interest which a mortgagor had in lands mortgaged by him, was, before the acts of 1795, ch. 56, and 1810, ch. 160, liable to be attached, condemned, and sold under a fieri facias*

*Whether or not in permitting a mortgagor, out of possession, to redeem, he can be compelled to pay, in addition to the mortgage debt, the value of extensive, permanent, and beneficial improvements placed on the land by the mortgagee? Quere.*

APPEAL from the Court of Chancery. The cause, which appears to be sufficiently stated in the opinion delivered by this court, was argued before JOHNSON, MARTIN and DORSEY, J.

*Pinkney* and *Winder*, for the appellants, raised two questions. 1. Had the complainants (now appellants,) a right to redeem a mortgage executed in 1754 under a bill filed in 1809? And, 2. If they had, were they responsible for the improvements made on the premises by the mortgagee, and those claiming under him?

1. They stated, that the chancellor had decreed that the complainants, might redeem on payment of the mortgaged debt, and the value of the improvements made on the premises, as ascertained by the auditor. They contended, that the equity of redemption of the premises could not be affected by the judgment for attachment against *Ford*, (the ancestor of the complainants,) the condemnation and sale under the *fieri facias* thereon. They referred to *Scott vs. Scholey*, 8 *East*, 467. *Metcalf vs. Scholey*, 5 *Bos. & Pull.* 461. *Lyster vs. Dolland*, 1 *Ves. jr.* 431. 1 *Pow. on Mort.* 339. 1 *Madd. Chan.* 418. *Campbell vs. Morris*, 3 *Harr. & M'Hen.* 535; and *Pratt vs. Law & Campbell*, 9 *Cranch*, 478, (Mr. *Key's* argument.) That under the act of 1715, *ch.* 40, *goods and chattels* only could be affected by an attachment. That even if third persons could, under an attachment, affect the mortgaged premises, yet the mortgagor could not, as his remedy was solely in chancery. 1 *Madd. Chan.*

421. *Perry vs. Barker*, 8 *Ves.* 527. 13 *Ves.* 198; S. C. That the assignees of the mortgagee stand in the same situation of the mortgagee, and are affected by all the rights of the mortgagor to redeem, and with notice, &c. 1 *Madd. Chan.* 435, 436, 432, 433. 1 *Vern.* 484. 2 *Ves.* 185. 1 *Atk.* 489, 522. That the complainants had a right to redeem, they referred to 5 *Bac. Ab.* tit. *Mortgage,* (E. 6) 90 to 95. 1 *Madd. Chan.* 414, 415.

2. To show that the mortgagee was not entitled to the value of the improvements placed on the premises, they referred to 5 *Bac. Ab.* tit. *Mortgage,* (F) 103, 104. (C) 18. 1 *Madd. Chan.* 426.

*Magruder,* for the appellees, contended, that the decree ought to be affirmed, 1. Because after possession for such a length of time by the mortgagee and those claiming under him, the complainants were not entitled to relief. 2. Because the attachment, judgment of condemnation, *fieri facias,* and sale under it, divested all interest which *Ford,* and those claiming under him, ever had in the land, and of course the complainants were not aggrieved by the decree. 3. Because the auditor's account was correct, and the defendant *(Woods,)* was entitled to the credits allowed him.

Upon the *second point,* and to prove that a mortgagor's equitable interest could be taken under an attachment, and that a sale thereof, after a condemnation, and under a *fieri facias,* was valid, he referred to *Campbell vs. Morris,* and *Pratt vs. Law and Campbell.* That if the complainants had a right to redeem, it could be done only by their paying the mortgage debt, and for all the improvements made on the premises. He cited *Newling vs. Abbott, Vin. Ab.* 185, *Ca.* 8, (A,) and *Helms vs. Langley,* where Chancellor *Hanson* allowed for the value of improvements placed on the mortgaged premises by the mortgagee.

JOHNSON, J. delivered the opinion of the court. A bill in chancery was filed by the appellants in 1809, claiming, as the assignees of a mortgagor, a right to redeem from the assignees of the mortgagee, the property in question, on the payment of the sum due. The Chancellor passed a decree, by which he sustained the right to redeem, on the payment of the debt, together with the value of extensive permanent and beneficial improvements, placed on the premises by the assignee

of the mortgagee since he obtained the possession; and, unless the debt and improvements were paid by the time limited in the decree, the bill should be dismissed.    From this decree an appeal is made.    As the complainants did not accede to the terms of the decree, by the payment of the sum ascertained to be due, the latter part of the decree, (by which the bill was to be dismissed,) had its operation.

On the appeal to this court, two questions arise. *First*— Had the complainants a right to redeem? And *Second*—If they had, were they responsible for the improvements made on the premises?    To form an opinion on the first question, we must necessarily turn our attention to the facts, as disclosed by the record.

*John Bassey,* the proprietor of the property in question, in the year 1754, mortgaged the same to one *Brian Philpot,* and also executed another mortgage to one *Larsh,* in the year 1763.    The mortgagor remained in the possession of the premises, and in the year 1773, conveyed the same, by an absolute deed, to *Thomas Ford,* under whom the complainants claim, who obtained, and held the possession until his death in the year 1776; and on his death the complainants, his heirs at law, held the land until the year 1789. *Philpot,* the first mortgagee, transferred his interest to *Larsh,* the second mortgagee.    Before *Larsh* became entitled to the whole of the mortgage debt, *Ford,* who was entitled to the equity of redemption, in the year 1786 adjusted the mortgage debt, and by way of collateral security gave his bonds for the amount then due.    On the bond to *Larsh* a suit was brought, and on the return of two *non ests,* under the act of 1715, *ch.* 40, a judgment for an attachment was obtained, the property in question returned as attached, a judgment of condemnation thereon rendered, on which a *fieri facias* issued in October 1789, and the property was sold to *Samuel Hughes* and *John Swan. Samuel Hughes,* one of the persons to whom the sale was made, in the year 1793 obtained a deed from *Larsh,* who then held the whole interest of the mortgagees; and of course, if the sale, under the *fieri facias,* was competent to transfer the mortgagor's right of redemption, (or if he had before acquired the interest of *Swan* his co-purchaser,) he had vested in him both the legal and equitable title to the property in contest.    The possession of the land, must be inferred to have been obtained by the purchasers at the

sheriff's sale, or soon after that transaction; for, from that
time, *Ford* is no longer found on the premises. In the
year 1801, *Samuel Hughes* sold the property to *William*
*Woods*, one of the defendants, who entered on the same,
and lived there when the bill was filed. *Woods* made the
improvements, for which, by the decree of the Chancellor,
he was to be paid, before he could be divested of his in-
terest.

The mortgagor is considered the substantial owner of the
property mortgaged; the debt due, is all the mortgagee, or
those claiming under him, can demand; and, altho' the le-
gal estate is in the mortgagee, it is merely to secure the
payment of the debt, and that effected, the mortgagor must
be restored to his original condition, the unfettered owner.
There is no necessity to detail the extent of the interest of
the mortgagor after the time limited for the payment of the
debt has elapsed; it may suffice to say, that except no right
of dower can arise, (and for this exception no substantial
reason can be given, and now no longer exists,) on the
mortgagor's interest, he is capable of transferring, or vest-
ing his interest, at his own pleasure; nor can he be depriv-
ed of this capacity so long as the right of redemption ex-
ists. The property mortgaged is substantially his—liable
to the incumbrance of the debt; subject to that responsibili-
ty he can sell it to meet any other claims, or demands, to
whom he pleases; and without his permission, and against
his will, it may be withdrawn from him in the discharge of
his debts, by a decree and sale, under the authority of a
court of equity; and since the year 1810, it is expressly
made responsible at law for his debts, as well as any other
equitable interest a debtor may be entitled to.

But, was it susceptible of being taken under the attach-
ment in the year 1789, and could it be disposed of, under
the *fieri facias?*

If it be conceded, that in *England* the right of redemp-
tion cannot be taken in execution and sold by a *fieri fa-
cias;* that is, the equity of redemption in chattels real, and
that, before the year 1810, in this state, a *fieri facias,* on
mere common law judgments, would not reach such pro-
perty; yet, it will not follow, that it may not be approach-
ed, or made liable to an attachment. There are no words
or expressions in the attachment law of 1715, *ch.* 40, con-
fining its operation to such property as could be affected by

June 1821. *fieri facias,* on ordinary or common law judgments. Its language is, to award an attachment "against the goods, chattels and *credits.*" By what process at law could the "*credits*" of a judgment debtor be affected? The writ of *fieri facias* could not meet them; and, if they could be made responsible, the aid of a court of equity must be solicited; and when the act caused one interest to be affected at law, to the discharge of a judgment at law, it is not presumed that any reason exists for excluding any other property belonging to the debtor from the same liability.

Ford
vs
Philpot

The language of the act of 1715, *ch.* 40, and that of the act of 1795, *ch.* 56, the supplement to the first, connected with the exposition given to the first act, in consequence of the statute of 5 *Geo.* II, (which passed in the year 1732,) are the same. The first makes answerable to the attachment, "goods, chattels and credits;" the last, "lands, tenements, goods, chattels and credits;" and, as the supplement to the first attachment law passed long after the statute of 5 *George* II, that statute could not affect its construction; and therefore, as lands and tenements, which by the act of 1715, after the statute of 5 *George* II, were, by construction, made liable to attachments, in order to make the supplement co-extensive with the original, they are expressly inserted.

As then the two laws on the subject of attachments are the same; that is, so far as extends to the species of property subject to their operation, the construction given to the one must apply to the other.

It appears in itself but just, that the interest which a mortgagor has in property mortgaged by him should be liable, as well at law as in equity, for his debts, and there appears no force in the objection, that it is not at law subject to a *fieri facias,* because it is not tangible; for the *right* itself, whether legal or equitable, is not tangible, but the land is; and by the sale, the interest of the party either legal or equitable, may well pass; if a legal interest, and the party in possession will not give it up, the purchaser is driven to his ejectment; and if only equitable, to get possession he must resort to a court of equity, where, if the sale under the *fieri facias* passed the right, he would not only obtain the possession, but the legal estate also.

And as it appears by the judgment of the court of appeals in the case of *Campbell vs. Morris,* 3 *Harr. & M'Hen,*

535, that the equity of redemption may be sold under an attachment issued in virtue of the supplementary act, and as the original and supplement are the same, as to the property to be affected, and as the court are not in the slightest degree disposed to question the propriety of the decision made in the case mentioned, they are drawn to the conclusion, that whatever interest *Ford* had to the land, passed from him by the attachment, condemnation and sale; and of course, when his representatives filed the present bill, they had not the redeeming power vested in them.

As then the complainants had no right to redeem, there is no necessity to express an opinion on that part of the case respecting improvements. The decree, therefore, dismissing the bill, is affirmed.

DECREE AFFIRMED.