HARDEN & CARSON *vs.* MOORES, Garn. of PRESBURY.—Dec. 1825.

An attachment on judgment cannot be issued from one county court to another county court.

The proceeding by attachment is not considered as embraced by the general term *execution,* as used in the acts of October 1777, *ch.* 12, and 1794, *ch.* 54.

If a defendant shall fly, remove, or absent himself out of the county in which a judgment is rendered against him, the court of the county, in which he may happen to be, may, upon the production of a transcript of such judgment, award an execution by *ca. sa. fi. fa.* or *attachment.*

If a defendant shall *remove* from the county in which a judgment is rendered against him, an *execution* may issue from the court of such county, to the sheriff of the county in which the defendant shall *reside,* &c.

Upon the return of a *nulla bona* on a *fieri facias,* issued in the county in which a judgment has been rendered, the clerk of the court of that county may issue a *fieri facias* against the goods, &c. of the defendant, in any other county, &c.

Executions, thus issued, may be renewed out of the county court to which they shall be returned.

APPEAL from *Harford* County Court. This was a writ of attachment on judgment, issued out of *Harford* county court on the 16th of December 1822, and directed to the sheriff of that county, reciting the recovery of a judgment in *Baltimore* county court on the fourth Monday in March 1820, by *Samuel Harden* and *Nehemiah Carson,* (the now appellants,) against *George G. Presbury* 3d, for $300 current money damages, and $7 27⅓ costs; that on the 10th of May 1822 a writ of *fieri facias,* directed to the sheriff of *Harford* county, issued out of *Baltimore* county court on the said judgment, against the said *Presbury,* returnable to *Harford* county court on the —— Monday in August then next; that on the fourth Monday of August 1822, being the return day of the said writ, the said

*Harden* and *Carson* produced before *Harford* county court a short copy of the judgment aforesaid, attested and certified by *William Gibson,* esquire, the clerk of *Baltimore* county court aforesaid, under his hand, and the seal of *Baltimore* county court aforesaid, before which latter court the judgment aforesaid was had and obtained; that on the said fourth Monday of August 1822, the sheriff of *Harford* county returned the said writ of *fieri facias,* endorsed *nulla bona.* The sheriff was therefore commanded to attach any of the lands, tenements, goods, chattels and credits, of the said *Presbury,* &c. (in the usual form of writs of attachments on judgments,) and make return thereof to *Harford* county court on the second Monday of March then next. At the return day, (March 1823,) the sheriff certified that he had "attached credits in the hands of *Parker Moores,* to the amount of $1700, in the presence of *Hambleton Morgan* and *Thomas S. Bond.*" The garnishee appeared and imparled, (*Presbury* being called made default.) At the next term, (August 1823,) the plaintiffs exhibited interrogatories to be answered by the garnishee, and on motion of the plaintiffs it was ruled by the court that he should answer them by the next term, to which time the garnishee again imparled. At the next term, (March 1824,) the garnishee answered the interrogatories on oath, and then moved the court to quash the writ of attachment; which the court did, with costs to the garnishee, and the plaintiffs appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN and DORSEY, J.

*Mitchell,* for the Appellants, contended, that the judgment of the court below was erroneous—1. Because the transmission of the short copy of the judgment, under the act of assembly, put the county court of *Harford* as fully in possession of the cause as if the judgment had been originally rendered there. 2. Because the proceedings were regular on the face of them, and that a motion to quash the writ was not the proper mode of taking the benefit of any defect, if any existed; but that the same should have been done by plea or demurrer. 3. Because whatever defects might exist in the original proceedings against

*Presbury*, the garnishee could not avail himself of them by way of defence to the attachment, that being in the nature of an execution.    To show that the proceedings were regular, he referred to the acts of October 1777, *ch.* 12; 1794, *ch.* 54; 1795, *ch.* 23; and 1715, *ch.* 40, *s.* 7.    If the *fieri facias* issued irregularly in not setting forth the issuing of the first *fieri facias*, it could only be set aside by *Baltimore* county court, and then only at the instance of the party affected by it.    *Jackson vs. Bartlett*, 8 *Johns Rep.* 361.    The garnishee should have pleaded the fact, as it could not be decided on motion to quash the writ.    1 *Com. Dig.* tit. *Bail*, (R 3) 704.    *Cholmondely vs. Bealing*, 2 *Ld. Raym.* 1096.    *Ball vs. Russell*, *Ibid* 1177.    5 *Com. Dig.* tit. *Pleader*, (3 L 14,) 783.    The motion should have been made at the return day of the writ, and by imparling it was waived by the garnishee.    1 *Tidd's Pr.* 90, 91, 165, 190, 435.    4 *Com. Dig.* tit. *Execution*, (G) (H) 136, 137.

*Maulsby*, *Gill* and *Speed*, for the Appellee.    By the act of 1715, *ch.* 40, *s.* 7, an attachment on judgment may be issued to the sheriff of the county wherein the judgment was rendered.    If the defendant shall *remove* or *absent* himself out of the county, then, upon a *transcript* of the judgment under seal, an attachment may be issued thereon in any county where the defendant shall happen to be.    1715, *ch.* 41, *s.* 8.    By the act of October 1777, *ch.* 12, *s.* 3, where the defendant has *removed* out of the county, an execution may be issued from the county court where the judgment was obtained, to the county where the defendant *shall reside;* and the plaintiff, to entitle himself to the benefit of the execution, shall produce a short copy of the judgment.    Such execution may if necessary be renewed from time to time out of the court of the last mentioned county.    1795, *ch.* 23.    The act of 1794, *ch.* 54, *s.* 9, authorises the issuing of a *fieri facias* to any other county than that in which the judgment was rendered, where a previous *fieri facias* has issued to the sheriff of the county where such judgment has been obtained, and is returned *nulla bona*.    The plaintiff, to entitle himself to the benefit of such execution, must produce an attested short copy of the judgment.    Such execution may, if necessary, be renewed from time to time out of the court of

the last mentioned county. 1795, *ch.* 23. There is no act of assembly which justifies the proceeding in this case. Here the foundation for issuing the attachment out of *Harford* county court, is a *fieri facias* from *Baltimore* county court, on a judgment rendered in that court, with a short copy of the judgment, in which writ of *fieri facias* it is not stated that any former *fieri facias* had been issued, and was returned *nulla bona,* so as to justify the issuing the *fieri facias* to *Harford* county court. It is true the writ is endorsed "*fi. fa.* to *Harford* county, after 2d *fi. fa;*" but this will not be urged as evidence of the fact, that a previous *fieri facias* had been issued, and was returned *nulla bona.* The court cannot presume that a former *fieri facias* had issued, and was returned *nulla bona.* The *fieri facias* does not show it, and there is no proof of the fact. Nor is there any proof that the defendant had removed from *Baltimore* county, so as to entitle the plaintiffs to a *fieri facias* to *Harford* county. The acts of ministerial officers are not to be presumed to be according to law in the absence of all proof. Their acts are to be strictly construed, their authority being prescribed by law. To show that the process of the court recite all the facts, they referred to the forms in 2 *Harr. Ent.* 689, 629, 57, &c. To show that the attachment laws, and all laws delegating a special jurisdiction, must be strictly pursued, they referred to *Shivers vs. Wilson,* 5 *Harr. & Johns.* 133. *Wicks vs. Caulk, Ibid* 42. *Mandeville vs. Jarrett,* 6 *Harr. & Johns.* 497. The clerk of *Baltimore* county court had no authority to issue the *fieri facias* unless a *nulla bona* had been returned on a previous *fieri facias.* It having improperly issued, it is void. *Purl's Lessee vs. Duvall,* 5 *Harr. & Johns.* 77. The *fieri facias* is irregular and void on another account— it has no return day. *West vs. Hughes,* 1 *Harr. & Johns.* 6. *Read vs. Markle,* 3 *Johns. Rep.* 523. *Tidd's Pr.* 1000. 2 *Bac. Ab.* tit. *Execution,* (P) 739. 6 *Com. Dig.* tit. *Return of Process,* 96. *Baltimore* county court could not act upon the *fieri facias,* as it was not before them, having been made returnable to *Harford* county court. By the act of 1795, *ch.* 56, the garnishee may make the same defence which the original defendant could make. He can protect his own rights, and those of his creditor; and they are not to be regarded as strangers. 2 *Bac.*

*Ab.* tit. *Customs of London,* (H) 258. The *fieri facias* was issued on the 10th of May 1822, on a judgment stated to have been rendered in March 1820, and there is no continuance stated to shew that executions had issued from time to time so as to keep the judgment active. By the act of 1715, *ch.* 40, s. 7, the garnishee is called upon to show why condemnation should not pass. The motion to quash the attachment is the proper mode.

*Mitchell,* in reply. The *fieri facias* was made returnable in *August,* the time of the meeting of *Harford* county court, as fixed by the act of 1811, *ch.* 108, of which all persons are bound to have knowledge, it being a public law. This case does not fall within the decision in *West vs. Hughes.* The jurisdiction of magistrates is limited, but that is not the case with the county courts. The county courts may amend their process, which cannot be done by magistrates, and in this instance the process might have been amended. 1 *Sellon's Pr.* 520. *Baltimore* county court were not bound to insert in the *fieri facias,* that a former one had been issued and returned *nulla bona.* 1 *Sellon's Pr.* 535, (G) 518, (C) 537. Bail can only take advantage of a *ca. sa.* not having been returned *non est* against his principal, by pleading the fact, and cannot move on that account to quash the *scire facias* upon the ground that no such *ca. sa.* had been issued. In *Barney vs. Patterson's Lessee,* 6 *Harr. & Johns.* 204, an attachment issued a term after it was awarded, and although it was irregular, yet it was held not to be void. So in *Winingder vs. Diffenderffer,* 5 *Harr. & Johns.* 181. The irregularities in this case were merely clerical, which the court could amend. *Duvall vs. Wells,* 4 *Harr. & M'Hen.* 164. The court should not have quashed the writ, but ought to have amended it. If there had been a recital in this *fieri facias,* that a previous one had issued, and had been returned *nulla bona,* it would no more clothe *Harford* county court with jurisdiction, than if there was no such recital. The fact that such a *fieri facias* had not issued, and been so returned, should have been pleaded, that the plaintiffs might show, if such was the case, that they had issued a former *fieri facias,* and that it had been returned *nulla bona.*

BUCHANAN, Ch. J. delivered the opinion of the court. This is the case of an attachment, issued out of *Harford* county court, on a judgment obtained against *George G. Presbury*, in *Baltimore* county court, which, after interrogatories filed and answered by the garnishee, was quashed by the court, on motion.

The question to which we have directed our attention is, whether an attachment will lie in any and what case, from one county court, on a judgment rendered in another? And that depends on the construction of several acts of assembly, which will be very briefly considered. Under the act of 1715, *ch.* 40, *s.* 7, "the plaintiff in a judgment may, instead of any other execution, take out an attachment against the goods, chattels and credits, of the defendant in the judgment." But that act only authorises the suing out attachments on judgments, from the courts in which the judgments are rendered, and has no application to this case.

By the act of 1715, *ch.* 41, *s.* 8, if a defendant in a judgment shall fly, remove, or absent himself out of the county in which the judgment is rendered, the plaintiff may take a transcript of the record of the judgment, under seal, and lay it before the court of the county in which the defendant may happen to be, to be entered upon the records of such county, upon which, that court is authorised to award execution by *capias ad satisfaciendum, fieri facias* or *attachment.*

That act relates only to the case of a defendant who shall fly, remove, or absent himself from the county in which a judgment is rendered against him; and though, by that act, an attachment, by way of execution, will lie from one county court, on a judgment rendered in another, yet it is a proceeding authorised only in the court of the county in which the defendant may be, and on the production alone of a transcript of the record of such judgment, under the seal of the court in which it was obtained. Which certainly is not this case. It is not the case of an attachment awarded by *Harford* county court on the production of a transcript of the record of a judgment rendered in *Baltimore* county court against *Presbury*, who had fled, removed, or absented himself from *Baltimore* county, and was then in *Harford* county; but of an attachment, sued out of *Harford* county

court, on a return to that court of *nulla bona,* by the sheriff of *Harford* county, on a writ of *fieri facias* issued out of *Baltimore* county court, and directed to him, upon a judgment rendered in *Baltimore* county court against *Presbury,* accompanied by the production of a short copy of the judgment. And to show that the attachment regularly issued, the acts of October 1777, *ch.* 12, *s.* 3; 1794, *ch.* 54, *s.* 9, and 1795, *ch.* 23, *s.* 1, have been referred to, by which it will be seen, on examination, do not authorise such a proceeding.

By the act of October 1777, *ch.* 12, *s.* 3, if a defendant in a judgment shall remove from the county in which the judgment is rendered, to any other county, an *execution* may issue from the court in which the judgment was rendered, to the sheriff of the county in which the defendant shall *reside,* returnable to the court of that county; and it is only made necessary for the plaintiff to produce a short copy of the judgment before the court, to which the execution is returnable, to entitle himself to the benefit of such execution. The act of 1715, *ch.* 41, it has been seen, relates to the case of an absconding debtor, and authorises an attachment to be awarded by the court of the county in which he may happen to be, on the production of a transcript of the record, and in no other case.

The act of October 1777, *ch.* 12, relates to the case of a removal by the defendant, for the purpose of residence; in which the execution is to be issued from the court in which the judgment was rendered, returnable to the court of the county in which the defendant may reside; with no authority to that court to issue any execution by attachment or otherwise, on the production of a short copy of the judgment; which was the only evidence that was produced in this case to the court of *Harford* county, of a judgment against *Presbury* in *Baltimore* county court. The *ninth section* of the act of 1794, *ch.* 54, gives to judgment creditors this further remedy, that upon the return of *nulla bona* on a *fieri facias,* issued in the county, in which a judgment has been obtained, the clerk of the court of that county is authorised to issue an *execution* against the *goods and chattels, lands and tenements,* of the defendant, in any other county, returnable to the court of the county in which *such goods and chattels, lands and tene-*

*ments, may be and lie,* without respect to the residence of the defendant. And by this act too, it is only made necessary for the plaintiff, to entitle himself to the benefit of such execution, to produce before the court, to which it shall be returnable, a short copy of the judgment. This act, no more than the act of October 1777, *ch.* 12, authorises the issuing an execution of any kind, out of any county court, on the production of a short copy of a judgment rendered in a different county. But like that act, does no more than give authority to the clerk of a county court, in which a judgment is rendered, to issue an *execution* on such judgment, returnable to the court of another county; with this difference only, that by the act of 1777, *ch.* 12, an execution so issued, is to be returned to the court of the county in which the defendant *shall reside,* and by the act of 1794, *ch.* 54, to the court of the county in which the *goods· and chattels, lands and tenements, of the defendant, may be and lie.* An attachment is not an ordinary process, by which to arrive at the fruits of a judgment, and will only lie, when specially authorised; as by the act of 1715, *ch,* 40, *s.* 7, from the court in which the judgment was rendered, against the goods, chattels and credits, of the *absent* defendant; and by the act of 1715, *ch.* 41, *s.* 8, from the court of the county in which a defendant may happen to be, who has fled, removed, or absented himself from the county in which the judgment was rendered, upon the production of a transcript of the record. The proceeding by attachment, therefore, is not considered as embraced or intended by the general term *execution,* as used in the acts of October 1777, *ch.* 12, and 1794, *ch.* 54, which is only to be understood, according to its ordinary and familiar acceptation. And the act of 1795, *ch.* 23, *s.* 1, which has been mainly relied upon, authorises the same kind of execution only that is authorised by the acts of 1777, *ch.* 12, and 1794, *ch.* 54, and gives no original authority to the court of one county to issue an attachment in nature of an execution, or any other execution on a judgment rendered in another. But only authorises, when *executions* have been sent from one county to another, according to the provisions of the acts of 1777, *ch.* 12, and 1794, *ch.* 54, the same kind of *executions* to be *renewed* out of the county court, to which the preceding *executions* were

returned, and to be proceeded upon, as if the judgments had been rendered in such courts—that is, the *renewed executions* to be so proceeded upon.   The language of the act is: "that in all cases where any *execution* has been, or shall be sent, with an attested copy of the judgment whereon the same may have been issued from one county to another, according to the provisions of the act passed at October session 1777," &c. "and of the act passed at November session 1794," &c. "the same proceedings shall and may, upon the return of *such execution,* be had thereon in the county court of the county to which such *execution* has been, or shall be sent, as if the said *execution* had been *originally* issued by the said court on a judgment obtained therein; and the same *execution* may, if necessary, be *renewed* from time to time, in virtue of such attested short copy of the judgment, out of the county court to which such *original execution* shall have been returned, and be proceeded upon in like manner as if the judgment in such case had been rendered therein."   The renewal here provided for, has reference to the original, and the terms "*the same execution may be renewed,*" can only mean, that another *execution* of the same kind may be issued, and not that a different kind of execution may be issued, which would not be a renewal of the former. And the original in this case from *Baltimore* county, being a *fieri facias,* it was a *fieri facias* only that was authorised to be issued from *Harford* county court, and not an attachment, which was not a renewal of the *original,* or in the language of the act, the *same execution*; but of an entirely different character, and only authorised by the act of 1715, *ch.* 41, *s.* 8, to be awarded, in the class of cases therein provided for, by a court, other than that in which the judgment is rendered, upon the production of a transcript of the record, and by no act, upon the production of a short copy of the judgment only.   And as neither the act of October 1777, *ch.* 12, nor the act of 1794, *ch.* 54, authorises the issuing an attachment from one county to another, so neither does the act of 1795, *ch.* 23; but the whole office of that act is to secure to a plaintiff suing out an execution from one county to another, according to the provisions, either of the act of 1777, *ch.* 12, or of the act of 1794, *ch.* 54, the full benefit of such execution; and also to authorise the re-

newing, if necessary, such execution from the county court to which it may be returned. And it provides in no case for the issuing an attachment, in nature of an execution on a judgment, from the county court in which such judgment is rendered, to another county, but leaves the law upon that subject as it was before.

But even if an attachment was embraced by the general term *execution,* as used in the acts of October 1777, *ch.* 12, and 1794, *ch.* 54, yet no attachment having been sent from *Baltimore* county to *Harford* county, there was nothing to authorise the issuing an attachment from the county court of *Harford;* that court being clothed with no authority to issue an original execution of any kind in the case, but only to renew such as might be sent from *Baltimore* county, accompanied by a short copy of the judgment. And if, moreover, the act of 1795, *ch.* 23, could be understood by the terms, *"and the same execution may, if necessary, be renewed,"* as authorising the issuing any kind of execution, different from the original returned, still this case is not covered, which is not founded upon, and if it was, could not be sustained under the act of October 1777, *ch.* 12. It is not stated in the proceedings, nor does it in any manner appear, that *Presbury* was residing in *Harford* county, and that act authorises an execution, of no kind, to be issued from the county court in which a judgment is obtained, to any county, other than that in which the defendant shall reside; and any renewal, founded upon the return of an original execution that issued without authority, must be irregular— the act of 1795, *ch.* 23, only authorising renewals of executions sent from one county to another, by the court to which they are returned, where the original executions are sent *"according to the provisions of the acts"* of October 1777, *ch.* 12, and 1794, *ch.* 54. And if these proceedings are to be considered as founded upon the act of 1794, *ch.* 54, after a return of *nulla bona* to *Baltimore* county court, it will make no difference. That act, upon the return of *nulla bona,* on a *fieri facias,* in the county in which a judgment has been rendered, authorises the issuing an execution against the goods and chattels, lands and tenements only, of the defendant, lying and being in any other county, returnable to the court of the county

in which such goods and chattels, lands and tenements, may be and lie; and authorises no execution by attachment, or otherwise, to be sent to a foreign county, against any thing else than the goods and chattels, lands and tenements, of the defendant. And there is nothing in the act of 1795, *ch.* 23, under any construction of it, that authorises the court of a county, to which an execution has been sent from another county, according to the provisions of the act of 1794, *ch.* 54, to issue any other execution than such as could have been sent from the county in which the judgment was obtained    In this case a *fieri facias* was sent from *Baltimore* county, where the judgment was rendered, to *Harford* county, to affect such goods, &c. of the defendant, as might be there; and if an attachment could, under the act of 1794, have been sent, it could only have been against the goods and chattels, lands and tenements, of the defendant, and not against his credits.    But upon the return to *Harford* county court of *nulla bona,* on the *fieri facias* sent from *Baltimore* county, and the production of a short copy of the judgment, an attachment, in nature of an execution, was sued out of that court, by way of renewal, against the lands, tenements, goods, chattels and *credits,* of the defendant; by virtue of which the *credits* alone of the defendant were attached in the hands of *Moores,* the garnishee, against which there was no authority for issuing an attachment from that court, if an attachment could have been issued at all.    And having, in any view of the subject, as we think, improvidently issued, it was properly quashed on motion.

JUDGMENT AFFIRMED.