Bland, Chancellor.
This case standing ready for hearing, the solicitors of the parties were fully heard and the proceedings read and considered.
The object of this bill is not to repel a claim made by the executor of Walter Clagett against these plaintiffs ; but to restrain the defendant, as administrator de bonis non of Samuel W. Clagett, from officiously making sale of that which had been the property of his testator, (but which had, long since, been legally delivered over to .these plaintiffs to whom it had been bequeathed,) for the purpose of paying the claim, which Walter, by reason of his over payment, as is alleged, had against the estate of his testator Samuel.
An executor who overpays is allowed, for such amount, to take the place of the creditor whose claim he has thus paid beyond the assets of his testator. He is, by substitution, regarded as one of the creditors of his testator: but such executor must establish the claim so overpaid against the heir or devisee by the same kind of testimony ‘ which might have been required of the original *532 creditor himself.(a) Had Walter Clagett, who thus became a creditor of Samuel W. Clagett, made this claim; the circumstance of his having delivered up the surplus, and the great length of time which had elapsed, from the delivery on the 9th of April 1819 until the institution of this suit, without accounting for the unqualified manner of the delivery, and the delay, would have been considered a 3 a complete bar. But, in this case, the statute of limitations, as such, cannot properly be applied; because, that statute is a defence given to a debtor against a creditor ; and here it is not the creditor himself who makes the claim. Yet the result of what this defendant claims a right to do would he the same as if the executor jof Walter Clagett were here, as plaintiff, asking payment and to have his claim sustained against these parties as defendants. And, consequently, whatever defence they would, in such case, be permitted to make, they ought, as plaintiffs, to be allowed to have the benefit of in the form in which the matter is now presented, at least so far as to hind this defendant.
I am therefore of opinion, that the circumstances, and lapse of time raise a conclusive presumption, that .this claim of Walter Clagett either never existed or has been satisfied.
Whereupon it is decreed, that the injunction heretofore granted in this case be and the same is hereby made perpetual; and it is further decreed that the defendant pay unto the plaintiffs their costs to he taxed by the register.
*533 Upon this decree the plaintiffs demanded of the defendant payment of their costs, which he failed or refused to pay. After which by their petition they stated, that they knew of no property which belonged to the defendant, excepting what might be reached by an attachment under the act of 1715, ch. 40, s. 7, and therefore prayed that such an attachment might be granted to them.
12th January, 1829. — Bland, Chancellor. — The solicitor of the plaintiffs’having been heard in support of their petition, the proceedings were read and considered.
. This petition exposes one of the still subsisting deficiencies of our code. It may be inferred from the general spirit of our laws, that all the property of a debtor, of every description, should be liable to be taken by his creditors in satisfaction of .their claims. By the common law, the personal property of the debtor, with the rents and profits of his real estate only, were liable; but by statutes derived to us from England, with some additional legislative enactments of our own, the real estate of a debtor has been sub-: jected to be taken in execution by fieri facias, or attachment, and sold for the satisfaction of his debts in like manner as his personal property. (b) There are, however, still several kinds of property, which a debtor may hold, laying beyond the reach of his creditor’s execution.
Public stock, the stock of banks, of turnpike road companies, and the like, cannot be taken in execution under a fieri facias, nor can choses in action be made liable to creditors at common law,(c) otherwise than by an original or judicial attachment ;(d) but the acts of Assembly, which direct the manner of suing out attachments, have in express terms treated them as process ancillary to the judicial powers of the courts of common law only; have authorized the use of them by any individual inhabitant of the United States who may be entitled to sue here; and have limited the extent of them to the taking of the lands, tenements, goods, chattels, and credits of the debtor in cases at common law only.(e) In England it is laid down, that choses in action, stock, debts, &c. are not liable to creditors; and that they cannot be taken on a fieri facias, or under a sequestration from chancery, *534 or be at all touched in equity for the benefit of creditors, (f) The reason, it is said, why dioses in action, according to the general rules of the Court of Chancery, are not liable to execution is, because the court takes notice, that the creditor has a method, by the ordinary rules of law, either to compel satisfaction, by seizing the person; or, where the person cannot be taken, by proceeding to an outlawry and taking the lands as well as effects into the hands of the king, which, as of course, are then applied in satisfaction of creditors, (g) Now, as it is evident, that our process of attachment is, in many respects, equivalent to this mode of obtaining satisfaction by means of an outlawry, which was never in use here, and as this court must take notice of the remedy by attachment, it may well be held, that a creditor cannot be permitted to| come here for relief in any case where he could obtain it by attachment at law. But, where a party cannot obtain relief at all, either by an ordinary execution, or by the extraordinary process of outlawry or attachment by reason of the peculiar situation -of the property, or the equitable nature of the title to it, he may obtain relief by bill in equity, (h)
But the mode of obtaining relief by bill in chancery must necessarily be comparatively tardy and expensive; and where the fund, thus pursued, consists of mere dioses m action, the delay may afford to a frauclulently disposed debtor ample time to place it entirely beyond the reach of any process that can be issued by a court of equity; so that, after the creditor had thus obtained a decree in his favour, he would be no nearer to relief than when he began.
I have met with no evidence of any well settled practice shewing, that this court had conceived itself authorized to allow a party to sue out a judicial attachment, instead of any other execution, to obtain satisfaction of a decree, (i) Yet I can see no just reason why the process of attachment should not be so enlarged as to compre *535 bend all cases ;(j) and be allowed as a means of obtaining satisfaction of a decree in equity as well as of a judgment at common law. (k) But this subject appears to have been, some years since, maturely considered by the legislature, who at that time armed the Court of Chancery with all such new and additional process as was then deemed necessary to an effectual exercise of its powers ;(l) and the common law process of judicial attachment was not then given, (m) I am therefore of opinion, that no such attachment can be awarded as prayed.
Whereupon it is ordered, that the petition of the 'plaintiffs be and the same is hereby dismissed with costs.

 Robinson v. Tonge, 3 P. Will. 400; Gist v. Cockey, 7 H. & J. 139.
Ex parte Street. — This petition was filed by John Street on the 3d of April 1806, under the act of 1785, ch. 72, s. 4, stating, that John Cook deceased had devised his land to be sold for the payment of his debts without authorizing any one to malee the sale; that the personal estate of Cook had been exhausted; and that the petitioner, as his executor, had paid debts to a much greater- amount than the assets which camejto his hands. The real estate was accordingly decreed to be sold. After which the case having been brought before the court for further directions, as to the distribution of the proceeds of sale among the creditors :
17th June, 1809. — Kilty, Chancellor. — The rule as stated by the auditor, of giving a priority toi-claims against the deceased to those which arise to the executor from an overpayment of the personal estate, was established by the late Chancellor. It has been departed from since, in cases where such overpayment was made on account of a judgment .or other lien; even so far as to put the executor in the place of such creditor to the extent of his lien. In the present case the overpayment does not appear to have been made expressly on account of any such judgment; but inasmuch as there were claims on judgments paid by the executor exceeding the amount of the overpayment, and the other claims now exhibited axe not entitled to any preference, it is thought proper to let the executor’s claim come in equally with others.

 5 Geo. 2, c. 7; 1810, ch. 160; Ford v. Philpot, 5 H. &. J. 315; Barney v. Patterson, 6 H. & J. 182.

 Harding v. Stevenson, 6 H. & J. 267.

 Ford v. Philpot, 5 H. & J. 317.

 1715, ch. 40; 1795, ch. 56; 1825, ch. 114.

 Dundas v. Dutens, 1 Ves. jun. 196; Guy v. Pearkes, 18 Ves. 196; Franckyin v. Calhoun, 3 Swan. 276; Pelham v. Newcastle, 3 Swan. 290; McCarthy v. Goold, 1 Ball & Beat. 389; Grogan v. Cooke, 2 Ball & Beat. 233.

 Edgell v. Haywood, 3 Atk. 356.

 Edgell v. Haywood, 3 Atk. 352; Willis, Plea. 115; Hadden v. Spader, 20 John. 554; Ford v. Philpot, 5 H. & J. 312.

 Rickott v. Higginson. — 1720.—Subpœna for costs. Mr. Warman, sheriff of Ann Arundel county, comes into court and certifies, that Mr. Gilbert Higginson, the defendant, is not to be found in his bailiwick; but, that he has left the subpcma for costs in this cause with Mr. Patrick Sympson, attorney in fact for the defendant. Therefore ordered, that attachment issue in the same manner as is directed out of the courts of common law.— Chan. Proc. Lib. P. L. fol. 568.

 Yerby v. Lackland, 6 H. & J. 451; Harden v. Moores, 7 H. & J. 4.

 The process of attachment to enable a creditor to obtain satisfaction of his debt, appears, by the acts of 1647, ch. 3, and 1682, ch. 2, to have been engrafted into our code among the earliest formations of its judicial proceedings; and has been in constant use, with few alterations, ever since. About the year 1705, in a report made by the then ex-chancellor, Lord Somers, to the House of Lords, it was among other things proposed, that “ the debts that any defendant hath owing unto him may be attached in execution, in satisfaction for debt and damages recovered against him ; and a day shall be given to the debtor to appear, the court shall give judgment for the plaintiff to recover so much as shall be attached, &c., as in London upon a foreign attachment.” — Parke's Hist. Co. Chan. 274.
Since this decision was pronounced, it has been declared by the legislature, that an attachment may be laid upon debts due the defendant upon judgments or decrees, 1831, ch. 321; and also that a fieri facias, or attachment, may be laid upon any interest which a defendant may have in the capital or joint stock of any corporation, or in the debt of any corporation transferable upon the books of such corporation; 1832, ch. 307.

 1785, ch. 72, s. 25.

 Shivers v. Wilson, 5 H. & J. 130.