The Washington Fire Insurance Company of Baltimore, and The Atlantic Fire and Marine Insurance Company *vs.* James E. Kelly.

*Insurable interest — Interest not absolute — Construction of conditions in Policies of Insurance — A contract to Sell, not an Alienation of the Insured property — What is not an Assignment of the Policy — Subrogation.*

A mortgagor in possession, and before foreclosure, has an absolute and insurable interest in the property.

A condition in a policy of insurance, that "if the interest in property to be insured be a leasehold interest or other interest not absolute, it must be so represented to the company, and expressed in the policy in writing, or otherwise, the insurance shall be void," does not embrace the case of a mortgage on the insured property, of which the assured is otherwise the entire owner, and where his interest exceeds the insurance thereon; and the failure by the assured, at the time of insurance, to communicate the existence of the mortgage, does not relieve the insurance company from its liability under the policy, to pay in case of loss.

A mere contract for the sale of the insured premises, without delivery of possession, or execution of a deed therefor, with only a part of the purchase money paid, is not a sale within the meaning of the proviso contained in the policy of insurance, that it shall be null and void if the property insured shall be sold or conveyed, without the consent of the company in writing. To constitute a sale within the meaning and purpose of the proviso, the right to the property and to the possession thereof, must pass from the vendor to the vendee.

On the 11th of February, 1868, the owners of certain premises, which were insured to the extent of $61,500, agreed to sell the same for $462,000, which the vendee agreed to pay—$10,000 in cash, $52,000 on delivery of the deed, to assume payment of the mortgage debts, amounting to $350,000, and to execute a mortgage on the premises to secure the balance of $50,000 On the same day, the vendee assigned the contract to K, and directed the conveyance to be made to him. The $10,000 was paid, but possession was not given, nor was anything else done under the contract before the fire, which occurred on the 2d of March, 1868.

Washington Fire Ins. Co. and Atlantic F. and M. Ins. Co. vs. Kelly.

On the 5th of March, the deed was executed and delivered to K; and the grantors, on the same day, agreed, in writing, to collect the amounts due on the insurance policies, and apply the same for the benefit of K. A formal written assignment of the policies and of the claims arising thereon, were, on the 1st of June following, executed to K. A witness testified that one of the vendors told him that it was agreed with the vendee, at the time of the contract of sale, that the policies of insurance held by the vendors, should stand for the benefit of the purchaser in the event of loss. A policy taken out by the vendors contained a condition that, in case of assignment, whether of the whole policy, or of any interest therein, without the consent of the company expressed by endorsement thereon, the liability of the company, in virtue of such policy, should thenceforth cease. On an action brought by K, the assignee of the assured against the insurance company, HELD :

1st. That the verbal agreement or understanding that the assured, the vendors of the property, should hold the policy for the benefit of the party with whom they made the contract of sale, and that so holding, and continuing to hold it at the time the property was destroyed by fire, was not an assignment of the policy, or of any interest therein, within the terms of the restriction.

2d. That the insurance company, on payment of the loss under its policy, was not entitled to be subrogated *pro tanto*, to the rights of the assured against the vendee, or his assigns, under the contract of sale.

3d. That the assignee of the assured was entitled to recover the whole amount of the insurance.

APPEALS from the Superior Court of Baltimore City.

These actions were instituted by the appellee on two policies of insurance issued by the appellants respectively, to recover for a loss resulting from the destruction by fire of the well known buildings called "Barnum's Museum," on Broadway, New York. They were insured in the names of Benjamin F. Beekman and Gilbert T. Reeder, in the Washington office, on May 9th, 1867, to the amount of $2,500, for one year from the 14th of May, and in the Atlantic office, on the 7th of June, 1867, to the same amount, for a like period from the date of the policy. No description was made of the interest which the assured had in the property, and no representation as to it was given to the companies or expressed

in either policy.  At the time of the insurance, Beekman and Reeder had only an equity of redemption in the property, subject to four mortgages, amounting to $350,000.

On the 11th of February, 1868, Beekman and Reeder contracted in writing to sell the premises to a certain Charles W. Budd, for the sum of $462,000, which he agreed to pay—$10,000 in cash, $52,000 on the delivery of the deed; the amount of the four mortgages was assumed; and a mortgage for the residue $50,000 was to be given.  The deed and necessary papers were to be delivered, and the money paid on or before the 1st of April, 1868.  On the day of the contract, Budd assigned all his interest to the appellee, for the sum of $1.00, subject to the performance of the covenants.  The $10,000 were paid, but no possession was given under the contract, nor was anything else done before the fire, which occurred on the 2d of March, 1868.  The loss was total. On the 5th of March, a deed was executed and delivered by Beekman and Reeder, to the appellee, as of the 11th of February, 1868.  On the day of the execution of the deed, Beekman and Reeder agreed in writing with the appellee, to collect the amount of all their policies, or so much thereof as might be collectable, and make certain applications of it for his benefit.  On the 1st of June, 1868, they made an absolute assignment of all the policies, including those issued by the appellants, to the appellee.

Mr. Frank P. Clark, an insurance broker of Baltimore, testified on behalf of the appellants, that as the agent of the Baltimore underwriters, " he visited New York shortly after the destruction by fire of the premises insured, and before the 12th of March, 1868, when proof of loss was furnished, and called on Messrs. Beekman and Reeder, and having become acquainted with the disposition of the property, he said to them that the companies considered themselves entitled, if they paid under their policies, to be subrogated to that extent to the rights of the assured, as against the vendee of the premises, and that if they, Beekman and Reeder, would so

subrogate them, the companies would at once pay the respective amounts which they had underwritten; Mr. Reeder was disposed to assent to this proposition, but Mr. Beekman interposed, and said that it could not be done, for that it was agreed with the vendee, at the time of the agreement of purchase, which had been given in evidence by the plaintiff in this case, that the policies of insurance held by Beekman and Reeder should stand for the benefit of the purchaser, in the event of loss, whereupon the said Beekman and Reeder declined the proposition made by witness, stating, at the same time, that they had no interest in the insurance money, but were claiming the same only for the plaintiff."

To this the appellants filed the following counter-statement of Beekman, contained in a letter written by his counsel from New York, which was admitted, by consent, as if orally testified to by Beekman, viz:

" He (Beekman) says that the only verbal arrangement about insurance at the time of the contract, or before the fire, was, that when the contract should be carried out, and the deed delivered, Budd should, on the one hand, have the benefit of existing policies, and on the other hand should pay Beekman and Reeder a *pro rata* proportion of the premiums for the unexpired portion of the policies from the time of the delivery of the deed."

The policies were offered in evidence. The policy of the Washington Company contained, in its fourth paragraph, the following language :

" If the said property shall be sold or conveyed, or if this policy shall be assigned, without the consent of the company obtained in writing hereon * * * then, and in every such case, this policy shall be null and void."

Its third condition was also as follows :

" 3. Policies of insurance subscribed by this company, shall not be assignable without the consent of the company, expressed by endorsement made thereon; in case of assignment without such consent, whether of the whole policy or of any

interest in it, the liability of the company in virtue of such policy, shall thenceforth cease ; and the company reserves to itself the right to elect, either to consent to the transfer or to return a ratable proportion of the premium and cancel the policy."

A portion of its second condition, was in the following words :

" If the interest in property to be insured be a leasehold interest, or other interest not absolute, it must be so represented to the company and expressed in the policy in writing, otherwise the insurance shall be void."

The policy of the Atlantic Company contained no special provision against sale or conveyance of the insured premises, and no clause precisely analagous to the second condition of the Washington policy. The fourth of its conditions, however, was in these words, viz :

" 4. Every policy of insurance made by this company shall be sealed with its seal, signed by the President and attested by the Secretary ; and the person for whose interest the insurance is made, must be declared and named therein, nor can any policy or interest therein be assigned, but by consent of the company, expressed by an endorsement made thereon."

*Exception :* The plaintiff presented two prayers, both of which were granted : The first, to the effect that Beekman and Reeder, on the facts and exhibits admitted in the agreement of counsel, had an insurable interest in the premises insured, at the time of the fire, and the second that, on the said facts and exhibits, there was no such sale or conveyance as would forfeit the rights of the assured, under the Washington Company's policy. The first prayer applied to both cases, the second to that against the Washington alone.

The defendants offered the following prayers :

1. In the case of the Washington Fire Insurance Company. That as it is admitted that Beekman and Reeder, at the time of application for the insurance in controversy, and the execution of the policy in suit, had only an equity of redemption

in the premises insured, subject to the incumbrances set forth in the deed of 5th of March, and referred to in the contract of 11th of February, if the jury find that Beekman and Reeder made no representation or statement that such was the character of their estate or interest in the premises, to the said defendant, at or before the execution and delivery of said policy, or at any other time, and that no such statement and representation of interest is expressed in the policy, then under the terms and conditions of the policy, and the facts admitted in the agreed statement of facts, the plaintiff is not entitled to recover.

2. In both cases. Even if the said policies attached, notwithstanding the facts referred to in the first prayer, that the assured, Beekman and Reeder, had no interest in the premises insured at the time of the fire, (under the facts admitted,) except such as the vendee of said premises had not paid for, and in estimating that, the jury must take into consideration not only the $10,000 paid in cash, but the mortgages for the assumption of which such contract of sale provides, and the plaintiff can only recover such proportion of the amount underwritten, as the amount of the purchase money thus left unpaid shall bear to the whole.

3. In both cases. Should the Court decline to grant the defendants' first prayer, then they (the defendants) were entitled, on payment of the loss under their policies respectively, to be substituted or subrogated pro tanto to the rights of Beekman and Reeder, under the contract of sale given in evidence against the vendees and their assigns at the time of the loss, upon the admitted facts and the evidence of the witness, Clark, (if the jury believe the same,) and the plaintiff is not entitled to recover.

4. In both cases. Should the Court decline to grant the defendants' first prayer, then that under the facts admitted, they (the defendants) were entitled, on payment of the loss under their policies, respectively to be subrogated pro tanto to the rights of Beekman and Reeder, at the time of the loss,

against the vendee, under the contract of February 11th, or his assigns, and that under the said facts admitted, if the jury believe that the said Beckman and Reeder, before suit brought, and before the assignment of the policies to the plaintiff, refused so to subrogate the defendants to their said rights, and declared to the agent of the defendant that they would not do so, then the plaintiff is not entitled to recover.

5. In the case of the Washington Insurance Company. That by reason of the facts admitted, the right of Beckman and Reeder to recover under the policy of the defendants, had been divested, and was so divested under the terms and conditions of said policy, when the loss took place, and the plaintiff cannot recover in this case against said defendant.

6. In the case of the Washington Insurance Company. That if the jury believe that, at the time of the contract of the 11th of February, given in evidence, it was understood and agreed by and between the parties thereto, that the policies held by Beckman and Reeder on the premises to which said contract of the 11th of February referred, should be retained and held by said Beekman and Reeder for the benefit of the vendee under said contract, and his assigns, and that said Beekman and Reeder did so retain and hold said policies for such benefit, without the consent of the insurers, and that the papers of March 5th and June 1st (filed with the agreed statement of facts) were executed in pursuance and fulfilment of such previous understanding or agreement, then in view of all the facts admitted in said statement, and of the terms and conditions of the policy of said Washington Fire Insurance Company, the plaintiff is not entitled to recover against said company.

7. In the case of the Atlantic Company. The same in its behalf, as prayed by the Washington Fire Insurance Company, in its own behalf in the sixth prayer.

The Court rejected the prayers of the defendants.

To the granting of the plaintiff's prayers, and the rejection of their prayers, the defendants respectively excepted; and

the verdict and judgment being against them, they appealed.

The cause was argued before STEWART, MAULSBY, BRENT, MILLER and ALVEY, J.

*Thomas W. Hall, Jr.*, and *S. Teackle Wallis*, for the appellants.

The policy of the Washington Insurance Company never attached, because the interest of Beekman and Reeder in the premises was not "absolute," within the meaning of the second condition, and was not represented to the company or expressed in the policy to be otherwise than absolute, as the condition required. The object of the clause was obviously to let the company know into what relations it was entering, and with whom, as well as to advise it of all the risks to which the interests and temptations of the parties so disclosed might expose them. *Bouvier's Law Dictionary*, "*Absolute;*" *New York Life Ins. Co. vs. Flack*, 3 *Md.*, 353; *National Ins. Co. vs. Crane*, 16 *Md.*, 286; *Mutual Ins. Co. vs. Deale*, 17 *Md.*, 38, 49; *Edmunds vs. Mutual Safety Co.*, 1 *Allen*, 307, 311; *Reynolds vs. The State Mutual Ins. Co.*, 2 *Grant, Pa.*, 327–9; *Columbia Ins. Co. vs. Lawrence*, 2 *Peters*, 25, and 10 *Peters*, 507; *Carpenter vs. Provid. Ins. Co.*, 16 *Peters*, 505; *Catron vs. Tenn. Ins. Co.*, 6 *Humph.*, 189.

The facts admitted shew a sale and conveyance of the property within the meaning and purpose of the provisions of the Washington Company's policy, such purpose being obviously not to reduce the amount of liability in proportion to the extent of alienation, but to prohibit the assured, under penalty of losing his whole insurance, from bringing into the contract, without the consent of the company, any new parties, new interests or new risks. This is shewn, beyond peradventure, by the fact that the provision against alienation is coupled with that against assignment of the policy, a clause having no other object than that just indicated, as has been repeatedly

decided. The alienation, in this case, brought new parties, new interests, and new risks into the transaction, just as effectually as if the contract had been consummated three days before the fire, instead of three days after. *Balt. Fire Ins. Co. vs. Loney*, 20 *Md.*, 36 ; *Ayres vs. Hart. Ins. Co.*, 17 *Iowa*, 185, 186, and 21 *Iowa*, 196, 198 ; *Finley vs. Lycoming Ins. Co.*, 30 *Pa.*, 310 ; *Hartford Fire Ins. Co. vs. Ross*, 23 *Indiana*, 181 ; *Edmunds vs. Mutual Safety Co.*, 1 *Allen*, 311 ; *Davenport vs. New England Mutual Co.*, 2 *Gray*, 338 ; *Keeler vs. Niagara Ins. Co.*, 19 *Wisconsin*, 537 ; 2 *Burrill's Law Dic'y, " Sale ;"* 33 *Howard's Pract. Rep.*, 400.

Even if the policy was not avoided, as to the Washington Company, by the sale given in evidence, and the two companies should be held as occupying equal ground on this point, they were still responsible for nothing more than the proportionate interest remaining in Beekman and Reeder at the time of the fire; and, for the purpose of arriving at this, the mortgages assumed must be taken as cash purchase money paid to the extent of $350,000, in addition to the $10,000 actually paid.

The companies were entitled, in any event, to be subrogated to the rights of the assured vendors, against the vendee, on payment of the loss, and having tendered payment on these terms, which the assured declined, they cannot now be held liable. *Pentz vs. Receiver of the Ætna Fire Ins. Co.*, 9 *Paige*, 969 ; *Carpenter vs. Prov. Ins. Co.*, 16 *Peters*, 501, 502; *Ætna Fire Ins. Co. vs. Tyler*, 16 *Wend.*, 397 ; *Ins. Co. vs. Woodruff*, 2 *Dutcher*, 554, 555 ; *Hart, et al. vs. Western Railroad Corporation*, 13 *Met.*, 105, 107, 108 ; *Smith vs. Ins. Co.*, 17 *Penn.*, 260 ; *Kernochan vs. N. Y. Bowery Fire Ins. Co.*, 5 *Duer*, 1, and 17 *N. Y.*, 428 ; *Parsons on Marine Ins.*, 227.

If the jury believed the testimony of Mr. Clarke, assumed in the hypothesis of fact adopted by the sixth and seventh prayers, to the effect that, at the time of the contract of sale of 11th of February, it was agreed between the parties that the policies should be held for the benefit of the vendee, and

that they were accordingly so held till the fire, without the knowledge or consent of the underwriters, and were finally assigned after the fire, in pursuance and fulfilment of such understanding, such arrangement was a mere circumvention of the conditions against assignment of the policy, or *any interest therein*, and as clear a violation of these conditions, in law, as if the assignments had been actually made in writing, without the assent of the companies, before the fire.

*I. Nevett Steele*, for the appellee.

Beekman and Reeder had an insurable interest in the premises insured at the time of the fire. They were the owners of the property, subject to a contract to convey it at a future time, if the vendee should perform the conditions of sale. Any interest, even though not amounting to property in, or title to the subject of insurance, is insurable. It follows that there was no error in granting the first prayer of the appellee. 2 *American Leading Cases*, 550 ; *Allen vs. Insurance Co.*, 2 *Md.*, 111 ; *Franklin Fire Ins. Co. vs. Coates & Glenn*, 14 *Md.*. 297.

The contract entered into by Beekman and Reeder for the sale of the property to Budd, did not forfeit their insurance under the proviso against alienation contained in the policy of the Washington Insurance Company. Without any such proviso in the policy, if the assured had parted with their whole interest in the thing insured before the fire, they would have had no cause of action, because they would have had no insurable interest. This proviso does nothing more than secure, by express stipulation, that which would otherwise be implied by law. " There must be an actual and complete alienation to call it into action." In the case now before the Court, there was nothing but a contract to convey, at some subsequent time. The vendee might never be willing or able to perform the conditions which would entitle him to a conveyance and possession of the property. In the meantime, Beekman and Reeder were in possession, retaining the title, and having received only a very small part of the purchase

money. Such a contract, not fulfilled by the vendee, so far as to entitle him to possession and a conveyance, was not a sale or conveyance of the property, within the meaning of the proviso. If this be so, the second prayer of the appellee was properly granted, and the fifth prayer of the appellants properly rejected. 2 *American L. Cases*, 618–626; *Hitchcock vs. Insurance Co.*, 26 *N. Y.*, 68; *Jackson vs. Mass. Mutual Fire Ins. Co.*, 23 *Pick.*, 418, 424, 425; *Masters vs. Madison Ins. Co.*, 11 *Barbour*, 624; *Ayres vs. The Harford Ins. Co.*, 21 *Iowa*, 193, 198; *Trumbull, et al. vs. The Portage County Mutual Ins. Co.*, 12 *Ohio*, 305; *Phœnix Ins. Co. vs. Lawrence*, 4 *Met.*, *(Kentucky,)* 9; *Perry Co. Ins. Co. vs. Stewart*, 19 *Penn.*, 45; *Tittemore vs. Vt. Ins. Co.*, 20 *Vermont*, 546; *Holbrook vs. Ins. Co.*, 1 *Curtis, C. C.*, 193; *Orrell vs. Hampden Fire Ins. Co.*, 13 *Gray*, 431; *Conover vs. Ins. Co.*, 3 *Denio*, 254; *Smith vs. Mutual Fire Ins. Co.*, 50 *Maine*, 96; *Heaton vs. Manhattan Ins. Co.*, 7 *Rhode Island*, 502, 507, 508; 1 *Phillips on Insurance*, 490.

The insurance is not void under the conditions of the policy of the Washington Insurance Company, requiring that " the interest in property to be insured, if a leasehold interest or other interest not absolute, shall be so represented and expressed in the policy," &c. This language is obscure and vague, and, looking as well to the fact that it is the language of the company as to the character of the condition, it ought to be taken strongly against the company and very strictly construed. The word " other" seems to indicate that by " interest not absolute," is meant something similar to a leasehold interest. But whatever may be the meaning of the word absolute as here used, it would seem to be clear, that the condition cannot be extended to the case of the owner of fee-simple property who has encumbered it by mortgage or otherwise. If it were intended to require the insured to specify or give notice of incumbrances on his property, the company was bound to use plain language to communicate its meaning. It is scarcely possible to suppose that the company so intended

by the language of this condition, and if it did, the condition would be a trap, which the Courts would not permit to serve its unjust purpose.

In equity, Beekman and Reeder were the fee-simple owners of this property, and the mortgages were but debts due by them, for the security of which they had given a lien on the property. The condition did not require them to say whether their fee-simple estate was legal or equitable. The first prayer of the appellants was, therefore, properly rejected. *Hough vs. City Fire Ins. Co.,* 29 *Conn.,* 10, 19, 20; *Gaylord vs. Lamar Ins. Co.,* 40 *Missouri,* 13; *David vs. Hart. Fire Ins. Co., and Tonghurt vs. Conway Fire Ins. Co., Digest of Decisions on Fire Insurance,* 584, 587; *Swift vs. Manufacturers' Ins. Co.,* 18 *Vermont,* 305; *Buffum vs. Bowditch Mutual Fire Ins. Co.,* 10 *Cush.,* 543; *Wilson vs. Conway Fire Ins. Co.,* 4 *Rhode Island,* 156; *Hope Mutual Ins. Co. vs. Brolasky,* 35 *Penn. State Rep.,* 282; 1 *Bosworth,* (*N. Y.,*) 507.

It is believed that Mr. Clark was mistaken in his evidence, and that the stipulation as to the insurance in the contract of sale was to be taken to be the contract between the parties; but, assuming that he is correct, and that at the time of the contract to sell, Beekman and Reeder agreed that their policies of insurance should be held for the benefit of the vendee in the event of a loss, such an agreement would not forfeit the policies. They did not part with their insurable interest nor assign the policies, but retained both. They brought no new party into contact with the insurance companies, and did not attempt to change, in any respect, their own legal relations to those companies. It will not be questioned, that, after the loss, they had the undoubted right to assign all their claim, &c., under the policies, as they might deem proper, and this was in fact all that they did. The vendor, under an executory contract for the sale of property, has a right, either with or without an agreement to that effect with the vendee, to insure the whole value of the property. This point covers the sixth and seventh prayers of the appellants. 2 *American*

*Leading Cases*, 567, 568, 569; *Insurance Co. vs. Updegraff*, 21 *Penn.*, 513; *Insurance Co. vs. Wheeling*, 11 *Leigh*, 354; *Reed vs. Lukens*, 44 *Penn.*, 202; *Thomas' Executors, vs. Von Kapff*, 6 *G. & J.*, 372; *Cromwell vs. Brooklyn Fire Ins. Co.*, 39 *Barb.*, 227.

The third and fourth prayers of the appellants were properly rejected, because, under the facts on which they were founded, the appellants had no legal claim to be subrogated to any rights of Beekman and Reeder, nor in fact had Beekman and Reeder any rights upon which the subrogation could operate.

The insurance here was not upon a debt, but upon the property, and the premium paid was the premium on the insurance of property. Besides, it is clear, from all the testimony in the case, that it was understood that the vendor would keep the property insured, while the contract of sale was running.

The contract with Budd was to sell "all that piece or parcel of land, *together with the buildings and improvements thereon*," &c. Before the maturity of the contract, the buildings were destroyed by fire, so that without rebuilding the vendors could not perform their contract, and could not compel the vendee to take and pay for the property. The fact that at the same time that the deed was executed, the vendee required and obtained the execution of the agreement, to collect and apply the insurance money for his benefit, shews that he would not have carried out the contract of sale without such an agreement; and the arrangement thus made was just and equitable. *King vs. State Ins. Co.*, 7 *Cushing*, 1; *Suffolk Ins. Co. vs. Croyder*, 9 *Allen*, 123; *Smith vs. McConkey*, 45 *Barbour*, 610; 2 *Story's Eq. Jur.*, secs. 750, 769.

The second prayer of the appellants was properly refused. It would, if granted, have worked great injustice to the appellee. The value of the buildings insured was admitted to be at least $100,000. The whole amount of insurance was $61,500. After deducting the cash payment of $10,000, the

insurable interest remaining was at least $90,000, of which about one-third was lost, not being covered by insurance. If, as the prayer asked, the assumption of mortgages to the amount of $350,000 is to be treated as the payment of so much cash, and the insurance is to be regarded as an insurance on the unpaid purchase-money only; still, as there was, at the time of the fire, $102,000 of purchase-money, there is no reason why the $61,500 should not go towards its payment.

STEWART, J., delivered the opinion of the Court.

The insurance companies in these cases, which have been brought up in the same record and argued together, insist that they are not respsonsible for the loss occasioned by the fire, because, as they allege, certain stipulations and conditions of the respective policies have not been observed on the part of the insured, although they concede that all other provisions have been complied with to entitle the insured to recover.

Under these circumstances, the determination of the questions involved, depends upon the construction of the clause in the policy of the Washington Fire Insurance Company, and the conditions of the policy, and the conditions in the policy of the Atlantic Fire and Marine Insurance Company. The clause is to the following effect:

"If the property shall be sold or conveyed, or if this policy shall be assigned, without the consent of the company obtained in writing thereon, then this policy shall be null and void."

The conditions of the same policy are of the following character.

"If the interest in property to be insured be a ' leasehold' interest, or other interest not absolute, it must be so represented to the company, and expressed in the policy in writing, otherwise the insurance shall be void."

"Policies of insurance subscribed by the company shall not be assignable without the consent of the company, expressed by endorsement made thereon; in case of assignment without such consent, whether of the whole policy or of any interest

in it, the liability of the company, in virtue of such policy, shall thereafter cease."

The Atlantic Fire and Marine Insurance Company has this condition, to wit:

" Every policy of insurance made by this company shall be sealed with its seal, signed by the President, and attested by the Secretary; and the person for whose interest the insurance is made must be declared and named therein; nor can any policy or interest therein be assigned but by the consent of the company, expressed by an endorsement made thereon."

The policy of insurance in this case, with all of its provisions and conditions, is the written contract between the insurer and the insured, and, as much of the argument of the case was directed to a discussion of the rule to be applied in the interpretation of such a contract, we may premise that the same principles of construction, govern the contract of insurance, as other written contracts.

In its interpretation, as in all other contracts, the intention of the contracting parties is to be regarded, and where that can be ascertained it must govern and control their rights under it, if not in conflict with the law. *Maryland Ins. Co. vs. Bossiere,* 9 *G. & J.,* 155.

The provision in the policy of the Washington Fire Insurance Company against the sale or conveyance of the property insured, and against the assignment of the policy without the consent of the insurers, as it imposes a restriction upon the right of disposing of property, should be construed, as any other contract with like provision, with strictness; and nothing less than the absolute sale or conveyance of the property, with all the usual legal ingredients to constitute the transaction as such, or similar complete assignment of the policy, can be considered as sufficient to avoid the policy on that account. *Lazarus vs. Commonwealth Ins. Co.,* 5 *Pick.,* 76 *to* 82.

There is no doubt that an insurance against fire without an interest in the subject-matter insured is a *wagering* contract, which the law does not sanction; and it is, therefore, neces-

sary that the insured should have an interest in the property insured, not only at the time of the insurance, but when the loss by fire occurs. If the insured sell the property, and transfer all his interest therein, or assign all interest in the policy, before the loss happens, he cannot recover by the principle of the common law. This provision in the policy is but the incorporation of this legal principle therein.

The insurance of buildings against loss by fire is a contract with the owner (or any person having an interest in their preservation,) to indemnify against any loss sustained by him by fire; and if the insured has sold, conveyed or assigned all his interest in the same before the fire, he can, in fact, sustain no damage, and the insurers are under no obligation to pay any one. *Angell on Insurance*, 230, 231.

According to the tenor and effect of the language in this proviso, it is not any change or modification in the title to the property that will avoid the policy, or any reduction of the interest from an absolute to a qualified interest, because the reduced interest is insurable.

The proviso is restrictive of the sale or conveyance of the property insured, and where the sale or conveyance is relied upon by the insurers, to prevent the recovery for any loss by fire, the sale or conveyance must be made out full and complete. To constitute a sale, within the meaning and terms of the proviso, the right to the property sold and to the possession thereof, must pass from the vendor to the vendee. The mere contract for the sale or conveyance, not divesting the title of the vendor and vesting the same in the vendee, is not a breach of the proviso.

A contract to convey the buildings insured at a future day, on payment of the purchase money, and between the time of contract and its consummation, they are destroyed by fire, the vendor being in possession, it is not such an alienation as vacates the policy. *Angell on Insurance, sec.* 206.

The contract of the 11th of February, 1868, between Beekman and Reeder and Charles W. Budd, was an executory con-

tract, to sell and convey the property insured and the lots upon which the buildings stood, and certainly was not such sale or conveyance as forfeited, the rights of the insured under the provisions of the policy.   There is no doubt, that the insured as the vendors of the property, before the actual conveyance thereof, held an insurable interest therein.   3 *Kent's Com.*, 489, *n.* 1.

Besides the clause in this policy against its assignment, it is one of the conditions annexed to the same, that it shall not be assignable nor any interest in it.   Fire policies have never been regarded as transferable, without the consent of the company.   *Angell on Insurance, sec.* 11.   But where there is no restriction, the policy was assignable in equity, like any other *chose in action;* though to render the assignment of any value to the assignee, an interest in the subject-matter of the insurance must be assigned also, for the assignment only covers such interest as the insured had at the time of the assignment. This restriction applies only to transfers before a loss happens.   3 *Kent's Comm.*, 496.

The assignment after the loss, stands on the same footing as the assignment of a debt or right to receive a sum of money actually due.   *Angell on Insurance, sec.* 222.

The agreement as to an assignment of the policies, conceding there was such an agreement between the parties, as understood by Mr. Clark, and that such agreement by *parol* could operate where there was a written contract between the parties, can occupy no higher ground than the agreement for the sale of the property.   It did not amount to an assignment of the policy, or the assignment of any interest therein, and was simply a contract to assign ; but the insured, in fact, held the policy and made no assignment thereof.   They held the possession of the property as well as the policy of insurance, notwithstanding the contract to sell and convey the same.

The condition in the policy of the Atlantic Fire and Marine Insurance Company, restrictive of any assignment of that policy or any interest therein, is of like purport and to the

same effect as the clause and condition in the policy of the Washington Fire Insurance Company, and the same construction is therefore applicable to that policy. In the condition, requiring the interest in property to be insured, if a *leasehold* or other interest *not absolute*, to be so represented to the company and expressed in the policy, the term *leasehold ex vi termini* imports a qualified interest, the other interest, *not absolute*, although not so particularly described by the general term used, must be understood as referring to some similarly qualified interest, as the "leasehold."

The language employed in the condition recognizes the distinction between *leasehold* or other qualified interests, as contradistinguished from those that are absolute or unlimited. The "leasehold" is carved out of the fee-simple, which remains vested in another, who holds the absolute estate, and so of any other inferior interest less than the absolute. The term "not absolute" cannot mean a fee-simple interest in the property.

The appellants whilst they concede that the title of the insured, was, in all other respects, perfect, yet insist that the interest of the insured in the property, was *not absolute* as contemplated by the terms of the condition, because of the existence of the mortgages thereon. The "leasehold" from its well known signification and its immediate connection with the other interest *not absolute*, necessarily is used as descriptive of the meaning and extent of the other. It is an interest less than the fee-simple, so is an estate for life, for a term of years or at will.

By a lease one grants an interest less than his own, and the lease is properly a conveyance of lands, tenements or hereditaments, made for life, for years or at will, but always for a less estate than the lessor has in the premises. When the owner in fee, grants a lease, he still retains his absolute interest. 2 *Blackstone's Comm.*, 287.

To inferior and limited interests, the general language of the condition is applicable, and the mortgages upon the prop-

erty must have the effect to reduce the estate of the mortgagor to some such qualified interest, to bring it within the operation of the condition.

The estate in lands, tenements and hereditaments, is the interest the tenant has in them, and to ascertain precisely the character of that interest, the estate must be considered with regard to the quantity of interest—the time at which that quantity of interest is to be enjoyed and the number of the tenants; the quantity of the interest is to be measured by its duration and extent; thus, either his right of possession is to subsist for an uncertain period, during his own life or that of another person, to determine at his own decease, or to remain to his descendants after him; or it is circumscribed within a certain number of years, months or days; or it is infinite and unlimited, being vested in him and his representatives forever.

The owner in fee-simple holds the lands, &c., to him and his heirs forever, *generally* and *absolutely*, and he has *absolutum et directum dominium*, and therefore is said to be seized thereof in *dominico suo*, in his own *demesne*.

Estates or interests may be held as a security for the payment of a debt by mortgage or dead pledge, *mortuum vadium*, 2 *Black. Com., ch.* 7, 104, 107, 157, and the mortgage upon it does not affect either the *quantity* or character of the estate, but simply holds it to secure the debt.   Mortgages are now universally regarded, in Courts of Equity, as mere securities for the payment of money, chattel interests or *choses in action;* the debt being considered the principal, and the mortgage as accessory and appertenant thereto, and before foreclosure belongs to the executor, and though the technical fee may descend to the heir, he takes it in trust for the personal representative.

The mortgagor is the substantial owner of the property, though the legal estate is in the mortgagee, and he can transfer or vest his interest at his own pleasure, so long as the right of redemption exists, and the interest of the mortgagor is also liable to attachment and execution.

The mortgagee has an interest in the subject-matter of the mortgage not *absolute*, but *commensurate* with the object contemplated to be attained by it, as a security for the payment of the debt due from the mortgagor to the mortgagee, and his claim does not vest in him the estate in the lands mortgaged, but follows the nature of the debt, and as a chattel interest belongs to his representatives in case of his death.

The equity of redemption in the mortgagor is not only a subsisting estate and interest in the land in the hands of the heirs, devisees, assignees and representatives of the mortgagor, but of any other persons who have acquired any interest in the lands, by operation of law or otherwise, in privity of title.

Courts of Equity, though a mortgage be forfeited, and the estate absolutely vested in the mortgagee, at common law, yet they will allow the mortgagor, at any reasonable time, to redeem his estate. So long as the estate can be shewn to have been treated as a pledge, there is a recognition of the mortgagor's title. Nor will they permit a conveyance made to secure a debt, to operate for any other purpose than to secure the debt; the conveyance will be considered as merely holding the property as pledged, and no agreement in a mortgage will be suffered to make the property irredeemable. *Ford vs. Philpot*, 5 *H. & J.*, 312; *Evans vs. Merriken*, 8 *G. & J.*, 39; *Chase vs. Lockerman*, 11 *G. & J.*, 185; *G. C. Coal Co. vs. Detmold*, 1 *Md.*, 237; *Allen vs. Mutual Ins. Co.*, 2 *Md.*, 111; *Timons and Wife vs. Harrison*, 19 *Md.*, 296; *Code, Art.* 64, sec. 20; *Story's Eq. Juris.*, secs. 1015 *to* 1023; 4 *Kent's Com.*, 156 *to* 166; 2 *Black. Comm.*, 159, *and n.* 8.

Notwithstanding the mortgages upon the property, the mortgagors held the equity of redemption, the real and beneficial estate, equivalent to the fee simple at law, descendible by inheritance, devisable by will, and alienable by deed, as any other absolute estate of inheritance. To all intents and purposes they held the *absolute* interest in the property insured; the mortgages were but temporary and

incidental incumbrances, and could not operate to render their interest a *limited* one.

Upon no sound principle of construction, relating to the nature and qualities of estates, can the interests of the mortgagors, as holders of the equitable fee-simple, be divested, or reduced to a qualified or inferior estate.

They were not within the terms of the condition, and were not required to communicate to the insurers the fact that the property was subject to the mortgages. If the insurers designed to require a disclosure of all incumbrances upon property insured, they have not used apt and sufficient language to accomplish that object.

To give to the terms of the condition the force claimed by the insurers, would be to substitute another and different contract for the parties, and such construction can find no warrant or authority in the terms of the condition as they stand in the policy. According to these views, it follows that there was no error below in granting the appellee's prayers, and refusing the first, fifth, sixth and seventh prayers of the appellants.

The agreement of the 11th of February, 1868, between Beekman and Reeder and Budd, was an executory contract between the parties; and under that contract, the insured were not divested of their interest in the property, and were entitled to be indemnified by the insurers, according to the contracts of insurance, for the loss they sustained by the fire.

To constitute an insurable interest, it is not necessary that the insured shall, in all cases, have the absolute and unqualified interest in the property insured—a trustee, mortgagee, a reversioner, a factor, an agent, with the custody of goods to be sold on commission, may insure. 2 *Marshall on Ins.*, 64, *ch.* 2, *p.* 789.

The mortgagor and mortgagee may each insure his own interest—the first insures the property, which he may do for its full value as the owner thereof; the latter, to the extent of his debt, and no farther. The first, notwithstanding the

incumbrance on his property, is entitled to recover the full amount of his loss, within the limits of the insurance; the latter, if the premises are destroyed by fire before the extinguishment of the mortgage, has the right to be paid his debt by the insurers, if not more than the insurance; and the underwriters, in such case, become entitled to the debt, and can recover the same from the mortgagor, and are subrogated to the rights of the mortgagee. 2 *Marshall on Ins.,* 64, *ch.* 2, *p.* 789.

The payment of the insurance does not discharge the mortgagor from the debt, but the insurers become his creditors, and have the right to an assignment of the debt from the mortgagee. There is no privity in law or fact between the mortgagor and the mortgagee in the contract of insurance, and the mortgagor can take no advantage of the policy of the mortgagee for his debt, for he has no interest whatever therein, but is bound to pay the debt to the insurers where they become his substituted creditors. *Angell on Ins.,* 59.

In *King vs. State Ins. Co.,* 7 *Cushing,* 1, referred to in 3 *Kent's Com.,* 489, *n.* 6, it was held, (SHAW, C. J., giving the opinion,) that the insurers could not insist upon an assignment of the mortgagee's interest as a preliminary condition to the payment of a loss, and that it was not inequitable to allow the mortgagee to recover, both from the underwriters and the mortgagor.

But the contract of insurance is strictly a contract of indemnity, and the mortgagee is not entitled to recover from the insurers the value of the property lost, and his whole debt besides, from the mortgagor. · When his debt is paid, and he is indemnified, it seems more in consonance with the just principle of indemnity, that the insurers should have the right to be substituted in his place and allowed to collect the debt from the mortgagor.

The policy of insurance, from its legal effect, according to judicial decision, must receive such reasonable construction as imports with its true character as a contract of indemnity.

*Angell on Insurance,* 103, *note* 1, referring to an opinion of GIBSON, C. J.

The effect of the destruction of the buildings by fire, upon the contract between Beekman and Reeder and Budd, could not operate to change the contract between the insurers and the insured. The fact of the insured having contracted to sell the property, and received a part of the purchase money, ought not to deprive them of their indemnity, unless it had been so stipulated by appropriate terms. If the insured had made an absolute sale of part of the property insured, that would have avoided the policy *pro tanto—Angell on Ins.,* 196—but as that was only a contract to sell the property, the insured are entitled to full indemnity, otherwise, the contract of insurance is not gratified. We think the second prayer of the appellants was properly refused. The third and fourth prayers of the appellants were properly refused.

The insured is entitled to be indemnified for the loss of the buildings by fire, to the extent of his insurance, and there is no reason to reduce the amount because a contract had been made for their sale.

The rule of subrogation is thus stated in 2 *Phillips on Ins.,* 282: "Where the insurable interest consists of a debt due to the assured, the assured is bound to assign to the underwriters the debt or his insurable interest, whatever it may be, in case of his being paid a total loss." This equitable principle cannot be applied here, where no debt has been insured, paid by the insurers, and to be assigned, and the insured have not been paid to the full limit of their loss.

The whole of the insurance, according to the admitted facts, amounted to some $60,000, and the buildings destroyed were worth $100,000. The fact that the buildings, with the lots upon which they stood, were under contract to be sold at the time of the fire, does not deprive the insurers of any of their rights, or increase their responsibility, nor does it confer upon the insured any additional advantage growing out of their contract with the insurers.

The insurers cannot be benefitted by a subrogation to the rights of the insured without affecting the claim of the insured to be fully indemnified for their loss. The equitable principle of subrogation cannot be applied where it conflicts with that indemnity to which the insured is entitled under the contract of insurance.

The destruction of the buildings by the fire is an absolute loss, which the insurers are obliged to meet, according to the terms of the policies of insurance, applied to the admitted facts, and there is no just ground upon which they can be relieved by any subrogation to the rights of the insured under the circumstances of this case.

*Judgment affirmed*
*in both cases.*

(Decided 27th May, 1870.)

Miller, J., delivered the following opinion:

The policy on which this action was brought was issued by the Washington Fire Insurance ·Company, of Baltimore, to Beekman and Reeder, insuring them for one year from the 14th of May, 1867, against loss by fire to the amount of $2,500, " on the three-story granite and brick building," situated in the city of New York, known as and occupied by "Barnum's Museum." The building was destroyed by fire on the 2d of March, 1868. The loss was total, and it is admitted the insurers are liable for the full amount of the insurance unless the legal defences relied on are sustained. These have been argued with great ability by counsel on both sides, and present questions of much interest, some of which, if not of entire novelty elsewhere, have not been settled by any express adjudication in this State. It has become the duty of this Court now to decide them ; and, with the permission of my brothers who heard the case with me, I will express my views in a separate opinion, and shall consider the several controverted points in the order in which they were discussed at bar.

Washington Fire Ins. Co. and Atlantic F. and M. Ins. Co. *vs.* Kelly.

1st. Beekman and Reeder were owners of the ground, as well as of the insured buildings, subject to incumbrances by way of mortgage, and the appellant insists that, as the assured held only an equity of redemption, and made no representation that such was the character of their interest, and as no such statement was expressed in it, the policy never attached, under the second condition of insurance annexed to and made part of the contract. In that condition there is, among others, a provision that " if the *interest* in property to be insured be a *leasehold* interest, or *other* interest *not absolute*, it must be so represented to the company, and expressed in the policy in writing, or otherwise the insurance shall be void."

I do not recognize, as sound, that principle or rule of interpretation, to which it is to be regretted some decisions have given countenance, that a clause like this is to be practically ignored, or construed most strongly against the underwriter, because found in the printed conditions annexed to the policy. The introduction into such instruments of numerous conditions and qualifications, often difficult of comprehension and fruitful of litigation, may be a practice to be deprecated; yet they are nevertheless parts of a contract binding upon both parties, and policies containing them must be construed by the same rules as other contracts. 7 *G. & J.*, 293; 9 *G. & J.*, 121. The evil, if such it be, must find its correction in the refusal of parties to accept policies clogged with these conditions. Courts of Justice, whose duty it is to construe, cannot ignore their existence or refuse to give to the terms they contain their natural and fair import, because of any hardship that may thereby be visited upon one of the parties. The law requires the Court to assume that parties understand the contract they make, and that every intelligible condition, clause and word used in it was inserted by design, has some meaning, and was intended to accomplish some purpose. To the clause now before the Court, must be applied the familiar rules of construction, all of which are subordinate to the leading principle that the intention of the parties must prevail,

unless inconsistent with some rule of law. The Court must give to the language used its just sense, and search for the precise meaning and one requisite to give due and fair effect to the contract, without adopting either the rule of a rigid or of an indulgent construction. 17 *Md.*, 497.

Claims requiring a statement of the interest of the assured, have long been used in insurance policies. They were doubtless originally directed against wagering policies, and were intended to protect underwriters from paying losses to those who, in fact, had not sustained them, who really had nothing at hazard, and whose interest, therefore, was that the event insured against should happen. Apart from any statutory enactment, as in England, it has long been held in this country, that the assured must have some insurable interest in the property, and that the contract of insurance is strictly a contract of *indemnity* based upon the utmost good faith and fair dealing. And apart from any clause of this description, it has been decided by the Supreme Court of the United States in several cases, that if, in a proposal for insurance, there be any misrepresentation or concealment of his interest by the assured, material to the risk, and which, if disclosed, would have enhanced the premium, it avoids the policy for the reasons so forcibly stated by Chief Justice MARSHALL, in 2 *Peters*, 49; "The contract for insurance is one in which the underwriters generally act on the representation of the assured; and that representation ought consequently to be fair, and to omit nothing which it is material for the underwriters to know. It may not be necessary that the person requiring insurance should state every incumbrance on his property which it might be required of him to state, if it was offered for sale; but fair dealing requires that he should state every thing which might influence the mind of the underwriter in forming or declining the contract. A building held under a lease for years, about to expire, might be generally spoken of as the building of the tenant, but no underwriter would be willing to insure it as if it was his, and an offer for insurance,

stating it to belong to him, would be a gross imposition. Generally speaking, insurances against fire are made in the confidence that the insured will use all the precautions to avoid the calamity insured against, which would be suggested by his interest. The extent of this interest must always influence the underwriter in taking or rejecting the risk, and estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the principles as on the interest of the assured; and it would seem, therefore, always to be material that they should know how far this interest is engaged in guarding the property from loss."

The Courts of most of the States have, however, held that the nature of the interest of the assured, in cases of ordinary contracts of insurance, not mutual, but made by a company insuring on its own account, is immaterial to the risk, and an omission to state the nature and extent of his interest where no inquiry has been made on the subject, and it is not exacted by conditions, will not avoid the policy, unless the failure so to state would operate as an actual fraud, (2 *American Lead. Cases*, 638 *to* 642,) and this must be now regarded as the settled law of this State. 14 *Md.*, 298; 18 *Md.*, 48; 20 *Md.*, 36. In the present case there were no written proposals and no specific inquiry as to title or interest, and the general purpose and intent of inserting a clause like that under consideration very probably was to embody the law announced by the Supreme Court, by making it an express condition in the contract that his interest should be stated, where the assured held an interest of a special or limited nature; as, for instance, under a precarious title, dependent for its continuance upon events which might happen against his will, or over which he had no control. With this view of the law, and the origin and purpose of these clauses, the question is, does the particular language of the clause now before the Court embrace a case where there is a mortgage on the insured property, of which the assured is otherwise the entire owner, and where his inter-

est far exceeds all insurance thereon, as, by the admitted facts of this case clearly appears?

Counsel for the appellant have argued that the words, " or other interest *not absolute,*" exclude the idea of an interest *encumbered* by mortgage where the legal title is in the mortgagee; that the term *"absolute,"* when applied to the ownership of an interest in property, in its ordinary and common acceptation, means nothing less than an unincumbered fee-simple estate—the whole, clean, sound thing; that he who has property covered by mortgage, can, in no fair and just sense of the terms, be said to have an *absolute* interest therein. There is certainly much force in this argument, and it is no easy matter to give it a satisfactory answer. But, looking to the purpose of the clause, considering the whole provision, the connection in which the term *"absolute"* is used, and giving to the arguments on both sides, the best consideration of which I am capable, I have reached the conclusion that an interest such as the insured had, was not intended by the framers of it to be covered by this clause. It is due to counsel and to the cause, to state more at length, and in addition to what has been said, the reasons that have led me to this result.

In the first place it is to be observed that it is not *title* but *interest* that is spoken of, and that *"leasehold* interest" is used in immediate connection with the terms " or *other* interest not absolute." For every purpose of insurance, and fully within the reasoning of Chief Justice MARSHALL, a mortgagor, in possession and before foreclosure, has all that interest upon which underwriters usually rely for protection of the property. There is no reason why disclosure of the existence of the mortgage should have enhanced the premium, for the entire loss in case of fire must fall on the mortgagor, and his interest is pledged to every precaution to avoid the calamity insured against. The whole loss is his, and he still remains liable to the mortgagee for the full amount of the mortgage debt. The fire does not extinguish this debt and all the powerful persua-

sions of interest are just as much on the side of the insurer as if no mortgage existed. Mortgages are now universally regarded, in Courts of Equity, as mere securities for the payment of money. The mortgagor is still the substantial owner of the property. He can sell, convey, devise or further encumber it, at pleasure, so long as the right of redemption exists. It may be taken for his debts under executions, and conveyances of it must be recorded under our registry laws. By the decisions of this Court the respective interests of mortgagor and mortgagee have been frequently and clearly defined. In *Ford vs. Philpot,* 5 *H. & J.,* 315, "the mortgagor," say the Court, "is considered the *substantial owner* of the property mortgaged; the debt due is all the mortgagee, or those claiming under him, can demand; and although the legal estate is in the mortgagee, it is merely to secure the payment of the debt, and that effected the mortgagor must be restored to his original condition, the *unfettered* owner. The property mortgaged is substantially his, liable to the incumbrance of the debt; subject to that responsibility he can sell it to meet any other claims or demands, to whom he pleases." And in *Evans vs. Merrikin,* 8 *G. & J.,* 74, it is said, "the mortgagee must be considered as having an estate or interest in the subject-matter of the mortgage, *not absolute* it is true, because such an estate is not imported by the terms of the mortgaged deed, but an interest commensurate with the legal object contemplated to be attained by it, as a security for the payment of the debt due from the mortgagor to the mortgagee." If such then be the nature and extent of *ownership* by the mortgagor, if he be the party upon whom the whole loss must fall if the property be destroyed, it may well be said he has not an interest *less* than absolute within the true intent and meaning of this condition of insurance. And here it may reasonably be asked why, if the underwriters deemed disclosure of incumbrances important, they did not, as is the almost universal practice in mutual policies where premium notes are made liens on the property insured, and the *state of title* is hence material, call attention of

the assured thereto, by appropriate inquiries directed to that specific object, or by placing the word "incumbrance" in this condition of their policy? Why use language to which doubt *could* attach, if they intended the non-statement of a mere incumbrance should vitiate the contract?

But again, the term "*absolute*" has no fixed, unvarying meaning. When used in connection with an interest in property it is not always synonymous with "unqualified." Used in connection with "estate" it means an estate in lands not subject to, or defeasible upon any *condition*. 1 *Burrill's Law Dic.*, 14. It may be quite as often and as pertinently used in contradistinction to "contingent" or "conditional," as to "qualified" or "encumbered." That such is the sense in which it is here used is, I think, apparent from the tenor of the whole condition, and especially from the *specification* of a *leasehold* interest as one of those required to be stated. The immediately following words, "or *other* interest not absolute," are thus pointed to some other interest of like character with a leasehold, that is, some estate less than a fee or carved out of the fee simple, or determinable upon some condition, event or contingency, as an estate for life, or *pur autre vie*, which, as well as a leasehold, come within the reasoning of the Supreme Court, as the loss may not fall upon their owners but upon the landlord, or remainder man or reversioner; and hence the importance to the insurers of having them stated.

But how stands the question upon authority? Few cases have been cited or found in which this, or a substantially similar clause, has been subjected to judicial construction, but these deserve attention. In *Hough vs. City Fire Ins. Co.*, 29 *Conn.*, 10, the policy contained this identical clause. The assured was in possession and had made improvements, under a parol contract of purchase, on which he had paid but part of the purchase money, and had received no conveyance of the legal title. There was, therefore, a vendor's lien on the property with the legal title in the vendor. The claim of the assured was sustained, and in determining this question the

Washington Fire Ins. Co. and Atlantic F. and M. Ins. Co. vs. Kelly.

Court say : " That is an absolute interest in property which is so completely vested in the individual that he can, by no contingency, be deprived of it without his own consent. So too he is the owner of such absolute interest, who must necessarily sustain the loss if the property is destroyed. The subject of insurance was an *interest*, not a *title*. It is an *interest* and not a *title* of which the conditions of insurance speak. The terms ' interest' and ' title' are not synonymous. A mortgagor in possession, and a purchaser holding under a deed defectively executed, have, both of them, absolute as well as insurable interests in the property, though neither of them has the legal title. It seems to have been the leading object of the framers of this condition to protect the company against the payment of losses to individuals who had not in fact sustained them. Thus the first clause," (and the one I am considering is the same,) " provides that property held in trust or on commission, must be insured as such, because in the one case the *cestui que trust* and not the trustee, and in the other the consignor and not the factor, would be the real or principal loser by the destruction of the property. So in regard to the holder of property under a lease, or whose interest in the property is contingent, if the property is destroyed, the entire loss may fall on the landlord in the one case, and in the other, instead of falling upon the individual insured, may, by the happening of the contingency, be cast entirely upon another. The condition in question speaks only of the character of the interest to be insured, not of its quantity. *Absolute* is here synonymous with *vested*, and is used in contradistinction to contingent or conditional. The plaintiff had a vested interest in the property of which he could not be deprived against his will—an interest dependent upon no contingency for its existence—an absolute interest." This is a direct, deliberate and well reasoned adjudication of the very question before this Court. In *Gaylord vs. Lamar Fire Ins. Co.*, 40 *Missouri*, 13, the assured was a purchaser under a decree of foreclosure, which allowed fifteen months for redemption before the deed conveying the

legal estate was to be executed, and the insurance was effected after the purchase and before the deed. The clause was substantially the same, being, "that if the interest in the property to be insured be a leasehold, trustee, mortgagee, or reversionary interest, or other interest not absolute, it must," &c. The decision was rested upon a different point, but in expressing their opinion upon this clause, the Court adopt the Connecticut case, and say they are inclined to think the title before them did not come within the special intent of the clause, which rather related to lesser estates or interests of the class particularly enumerated, that is, other estates less than a freehold, or carved out of the fee simple.

The case of *Reynolds vs. State Mutual Ins. Co., 2 Grant's Cases*, 326, was that of a mutual policy, which contained, however, the clause we are now considering, and also required disclosure of incumbrances. The assured had made a contract for the purchase of the property, and had paid but a small sum upon it, much less than the amount insured. The Judge below, in his charge to the jury, said, in reference to this clause: " We also consider the insured had not an estate *absolute*. It is obvious that, in speaking of 'a leasehold interest, or *other interest not absolute*,' the company had in view the necessity of its officers knowing the character of the insured's interest in the property. A fee-simple is an estate absolute. Here, Mr. Reynolds had no absolute estate of the kind, but a mere equity, to be changed to a fee-simple estate on paying the purchase-money. The absolute estate remained in the vendors." But when the case went up, the Supreme Court are careful to limit their decision. " What we decide now," they say, " is this simple point: that one who occupies property for which he has no deed, but which he has agreed to purchase, cannot conceal the facts and have it insured on his own account for a larger sum than the amount of the purchase money he has actually paid at the time of the insurance. With this rule standing directly in his way, the plaintiff could not possibly recover, and the other questions raised in the argu-

ment are, therefore, of no importance." This cannot, therefore, be regarded as a decision in conflict with the Connecticut case, and I have been able to discover none that is.

Reference has been made to *David vs. Hartford Fire Ins. Co.*, and *Tonghurst vs. Conway Fire Ins. Co.*, cited in the *Digest of Decisions on Fire Insurance*, 584, 587; also to *Swift vs. Vermont Mutual Ins. Co.*, 18 *Vermont*, 305; *Buffum vs. Bowditch Mutual Fire Ins. Co.*, 10 *Cush.*, 543; *Hope Mutual Ins. Co. vs. Brolaskey*, 35 *Penn. State Rep.*, 282; *Wilson vs. Conway Fire Ins. Co.*, 4 *Rhode Island*, 141, *and* 1 *Bos.*, 507, on the part of the appellee, and to *Edmunds vs. Mutual Safety Fire Ins. Co.*, 1 *Allen*, 311, and *Packard vs. Agawan Mutual Fire Ins. Co.*, 2 *Gray*, 334, on the part of the appellant, all of which I have examined, but find they present entirely different facts, are decided on other grounds, and furnish but little if any aid to the solution of the question now under consideration. It was also suggested by counsel for the appellant that this Court, in 14 *Md.*, 298, had used the terms "*limited* or *partial interest* in the property insured," as the appropriate opposites to an *absolute* interest; but I think it was the purpose of the Court there simply to point out the conflict of authority between the decisions of the Supreme Court and those of the several States, as to the necessity of disclosing such interests in the first instance, and in the absence of any inquiry on the subject, and not to define what constituted such interests, and if they did, the case goes no further than to decide that a *mechanics' lien*, the interest which the insured there held, was an interest of that description. I do not consider that as a case controlling the decision of the present question.

I am, therefore, both upon reason and authority, fully convinced the assured mortgagors had no such qualified or limited interest in the insured property as to bring them within the terms of this second condition of insurance.

2d. On the 11th of February, 1868, Beckman and Reeder entered into a written agreement with Budd, by which they

"agree to sell" to the latter the grounds, " with the buildings and improvements thereon erected," for $462,000, which Budd agrees to pay—$10,000 in cash, $52,000 on *delivery of the deed*, to assume payment of the mortgage debts, amounting to $350,000, and to execute a mortgage on the premises to secure the balance of $50,000, the deed and necessary papers to *be delivered* on or before the 1st of April, 1868. On the same day, Budd assigned this contract to the appellee, and directed the conveyance to be made to him. The $10,000 was paid, but possession was not given, nor was anything else done under the contract *before* the fire. On the 5th of March, three days *after* the fire, the deed was executed and delivered to the appellee, and the grantors on the same day, agreed in writing, to collect the amounts due on the insurance policies and apply the same for the benefit of the appellee. A formal written assignment of the policies, and of the claims arising thereon, was subsequently, on the 1st of June following, executed to the appellee. On this state of facts, one of the positions of the appellant, presented by its fifth prayer is, that the contract of the 11th of February was a sale or conveyance of the property before loss, within the meaning and purpose of the provision in the body of the policy, making it void if the insured property " shall be *sold* or *conveyed*" without the assent of the company. Without any such provision against alienation, a sale of the property insured, by a fire policy, by which the assured parts with his whole interest therein, and is, therefore, deprived of all interest in its preservation, will prevent a recovery for a subsequent loss. The law requires he should have an insurable interest at the time of loss. Most policies, however, guard against this contingency by an express stipulation instead of relying solely upon the rule of law. Hence, clauses against alienation, couched in different phraseology, are constantly to be met with, sometimes in different parts of the policy, and sometimes in the same provision, and in immediate connection with that relating to the assignment of the policy itself.

The latter fact does not seem to have been regarded as of importance, or as warranting any different construction than if it stood as a separate clause. The provision in this policy is in the simplest and least stringent form prohibiting a *sale* or *conveyance*, terms of equivalent import with, and certainly not more comprehensive than "alienation by sale or otherwise." The decided weight of authority upon the construction of clauses thus expressed is, that to call them into action or preclude the right to enforce the insurance, there must be an actual and complete alienation, and hence a contract of sale will not fall within its terms so long as the vendor retains the legal title and continues to have an interest in the preservation of the premises, as security for the payment of the purchase money, or, at all events, until the terms of sale are so far fulfilled as to invest the vendee with the full equitable ownership, and entitle him to the immediate possession of the property sold. 2 *Amer. Lead. Cases* (*notes by Hare & Wallace,*) 626, and cases there cited; also, *Hitchcock's Case*, 26 *N. Y. Rep.*, 68, and *Smith's Case*, 50 *Maine*, 96. I rest my opinion on this point, entirely upon the weight of authority within which the present case clearly falls. The contract was executory, nothing having been done under it at the time of loss save payment of the $10,000; possession had not been delivered, and, by its terms, could not have been demanded until the deed was executed. Placing my opinion upon this ground, it becomes unnecessary to inquire what rights the parties to this contract might have had in a Court of Equity, or in what light that Court would have regarded the transaction, or how it would have deemed the title to the property as affected thereby.

3d. In immediate connection with the prohibition against a sale or conveyance, there is a provision that if the *policy* shall be *assigned* without the assent of the company obtained in writing thereon, it shall be void, and one of the conditions also provides that policies of insurance subscribed by the company, shall not be assignable without the consent of the com-

pany, expressed by endorsement made thereon, and in case of assignment without such consent, whether of the *whole policy or any interest in it*, the liability of the company, in virtue of such policy, shall thenceforth cease.   The witness, Clark, testified that Beekman told him it was agreed with the vendee, at the time of the agreement of purchase of the 11th of February, that the policies of insurance held by Beekman and Reeder *should stand for the benefit* of the purchaser *in the event of loss*.   Upon this, in connection with the other proof, is based the appellant's sixth prayer, which asserts that if the jury believe that, at the time of the contract of the 11th of February, it was agreed by and between the parties thereto, that the policies held by Beekman and Reeder should be retained and held by them for the benefit of the vendee under that contract, and his assigns, and they did so hold and retain them, without the consent of the insurers, and that the papers of the 5th of March and the 1st of June were executed in pursuance and fulfilment of such previous understanding or agreement, then, in view of all the admitted facts in the case, and of the terms and conditions of the policy, the plaintiff cannot recover.

I shall assume the proof affords a sufficient basis for this prayer.   The substantial legal proposition, it asserts, is that a verbal agreement or understanding that the assured should hold the policy for the benefit of the party with whom they made the contract for a sale of the property, and their so holding and continuing to hold it at *the time of the loss* was an *assignment* of the policy or of some interest therein, within this prohibition; for after the loss had happened and the risk had terminated, they had under all the authorities the undoubted right to assign it, or rather their claim upon the underwriters thereunder, without consent of the company, and it can make no difference whether *that* assignment was in pursuance of any previous understanding or not.   An assignment of the policy usually accompanies or follows the sale or transfer of the property insured.   The purpose of

these restrictions as to assignments of both, is obvious and has been well stated by our predecessors, in *New York Life Insurance Company vs. Flack*, 3 *Md.*, 353. "A fire policy may be underwritten for one person, when it would not be for another. In all such cases the character for *integrity* and *caution* of the party constitute important considerations. Whilst the character of one person would be a complete guarantee that he would not fire his own house or goods, the character of his assignee might furnish no such assurance, and therefore it is that in fire policies the assent of the underwriters is made indispensable to the validity of the assignment." In reason these restrictions ought to be made to refer solely to the transfer of the interest in the insured property, for an assignment of the policy viewed as a contract, simply operates as an equitable assignment of the proceeds in case anything shall become due, and a doubt has been very forcibly suggested, whether a clause which attempts to restrict an assignment in this sense, is not contrary to legal policy and void, as much as a similar restriction upon the transfer of a debt or bond, or a right of action would be. 2 *American Leading Cases*, 623. The weight of judicial authority, however, is the other way and such clauses relating to the assignment of the policy alone are upheld as valid. But a case to come within the restriction must also come clearly within the objects and known motives of the underwriters in imposing it. I have said the contract referred to, was not a sale or conveyance of the property within the restriction on that subject. The assured retained and held an insurable interest at the time of the loss and also retained the policy. They did not part with it by any conveyance or written transfer, and the verbal arrangement and holding of it as stated in this prayer, do not in my opinion, amount to an assignment of the policy or of any interest in it, within the terms of this restriction. No new parties were introduced into the contract with the insurers and no change made of the legal relations between them and the assured. A pledge and deposit of the policy

with a creditor as security, original or collateral for a debt, an agreement by a mortgagor to keep the property insured for the benefit of the mortgagee, are not *assignments* of the policy within this clause, but operate only in equity as an appropriation of the proceeds of the policy if loss occurs, to the debt or mortgage for the benefit of the creditor or mortgagee. Here the assured agree verbally with a party with whom they had made a contract of sale, not then, but, by its terms shortly to be consummated by payment of the purchase money, assumption of the mortgages and conveyance of the legal title, to hold the policy for his benefit in case a fire should occur before the contract was thus completed. In my judgment that is not an assignment prohibited either by the language or purpose of this restriction. In support of this conclusion, I refer to 1 *Phillips on Ins.*, 107, 108; *Lazarus vs. Commonwealth Ins. Co.*, 5 *Pick.*, 76, and same case in 19 *Pick.*, 81; *Cromwell vs. Brooklyn Fire Ins. Co.*, 39 *Barbour*, 227; *Ellis vs. Kreutzinger*, 27 *Missouri*, 311.

4th. The next position is that, on payment of the loss under the policy, the appellant was entitled to be subrogated *pro tanto* to the rights of the assured, against the vendee or his assigns, under the contract of the 11th of February, and that the refusal of the assured so to subrogate the appellant to their rights is a bar to the recovery on the policy. Assuming, without intimating an opinion to that effect, the latter branch of this proposition is correct, if the right of subrogation contended for exists, I am thoroughly satisfied, after an examination of all the authorities referred to in argument on the subject, this is not a case in which the insurers have any such right of subrogation. The assured were not mortgagees, nor was the insurance upon any debt or lien on the premises, but on the *property itself.* The loss was total, and the assured, at the time of the fire, had an interest exceeding in value all insurance on the property. After the contract referred to, the purchaser may also have had an insurable interest, but no insurance was effected in his name. As between the parties

to this contract, rights may have existed and agreements may have been entered into as to the application of the proceeds of the policy, in the event of loss before the contract was finally consummated, which, after the loss, were carried out by an assignment of the policy, or by force of the contract itself, the vendee *may have been* entitled, as against the vendors, to the amount which became due to them by the insurers under the policy, but none of these rights or agreements can in any way affect the obligation of the underwriters, who took the risk upon the *property.* They have no possible interest or concern with, and no equitable right to intermeddle between vendors and vendee under this contract, or demand cession of any claim of the former upon the latter. *Insurance Company vs. Updegraff,* 21 *Penn. State Rep.,* 513; *Reed vs. Lukens,* 44 *Penn. State Rep.,* 200.

5th. What has been said upon the other points disposes of the proposition contained in the appellant's second prayer. It is not a case to which the theory of that prayer is applicable The insurance was upon the *buildings,* the admitted value of which was at least $100,000, whilst the whole amount of insurance on them was but $61,500. Being entirely destroyed, there was a large loss not covered by insurance. Under this state of facts, and under this policy, the underwriters have no right to measure the extent in amount of their responsibility, by the proportion which the whole amount underwritten may bear to the amount of purchase-money due the assured at the time of loss, under a contract for a sale of *the lots,* as well as of the buildings, after deducting the $10,000, and the *mortgage debts,* which were liens on the *whole premises,* and for the assumption of which that contract provided. But even if the assumption of the mortgages to the amount of $350,000 is to be treated as so much cash paid, and the insurance is to be regarded as an insurance on the unpaid purchase-money only, still there was, at the time of the fire, $102,000 purchase-money to be paid under the contract, and I can perceive no reason why the $61,500 of insurance should not be recovered and applied to its payment.

For these reasons, I am of opinion the judgment should be affirmed.

MAULSBY and BRENT, J.

We concur in the conclusions of our brothers, STEWART and MILLER, upon the several questions presented by the record in this case, and think the judgments of the Court below should be affirmed.

ALVEY, J., delivered the following dissenting opinion:

As to the proper construction of the provision in the policy against sale or conveyance of the property insured, without the assent of the company, I dissent from the conclusion to which my brother Judges have arrived, and think the judgment below should be reversed. But, as to the other questions involved in the case and decided, I concur in the opinion of Judge MILLER.