JOHN H. WOODWARD AND OTHERS, RESPONDENTS, v. THE REPUBLIC FIRE INSURANCE COMPANY, APPELLANT.

*Policy of insurance against fire — effect of the failure of the assured to refer to a real estate mortgage upon the property — to a chattel mortgage or a part thereof — when the policy is severable — agreement that the mortgagee shall have the benefit of the insurance money — the company cannot set up his claim thereto, and that the mortgagee should be a party to an action on the policy — principal — when he is chargeable with the knowledge of his agent — Evidence — when a witness may be impeached by proving contradictory statements made by him.*

This action was brought upon a policy of insurance against fire, issued by the defendant to the plaintiff John Woodward, upon his dwelling-house and the furniture therein, and his three barns and the produce therein, and upon his wagons, sulky and farming utensils. The dwelling-house, each barn, the farm produce, household furniture, etc., were each separately valued, although the premium was charged as a gross sum. The policy provided, among other things, that " if the interest of the assured in the property, whether as owner,

trustee, consignee, factor, agent, mortgagee, lessee or otherwise, is not truly stated in this policy, then, and in every such case, this policy shall be void. If the interest of the assured in the property shall be any other than the entire unconditional and sole ownership of the property, for the use and benefit of the assured, or if the building insured stands on leased grounds, it must be so represented to the company and expressed in the written part of this policy, otherwise the policy shall be void."

There were two mortgages upon the real property at the time the policy was issued, one given to Margaret Evans and the other to one Vandewaker. A clause was written in the body of the policy making the loss, if any, payable to Margaret Evans, as her interest might appear, but no reference was made to the Vandewaker mortgage.

*Held*, that the policy was not vitiated by the omission of all reference to the Vandewaker mortgage; that the assured held the legal title to the property, and was the sole owner thereof within the meaning of those terms as therein used.

It appeared that the agents of the defendant, by whom the policy was issued, knew of the existence of the Vandewaker mortgage before and at the time of the issuing of the policy, but it did not appear that it was referred to at that time.

*Held*, that the defendant must be deemed to have known of the Vandewaker mortgage and to have waived the condition of the policy, so far as it covered that mortgage.

If knowledge of a material fact be acquired by an agent previous to the transaction wherein he acts for his principal, and the fact is in the mind of the agent at the time when he performs the act or transacts the business in question for his principal, then as to all the parties concerned it is, in legal effect, the same as if the information was communicated to the agent at that time.

A part of the personal property was subject to a chattel mortgage given by the assured, which was outstanding and unpaid at the time when the policy was issued.

*Held*, that the legal title to the property covered by the chattel mortgage was in the mortgagee, and that as to such property the policy was avoided by reason of the foregoing condition.

That the insurance was separable, and that the policy was valid as to all of the property other than such as was described in the said chattel mortgage.

By the Vandewaker real estate mortgage the mortgagor agreed to keep the buildings standing on the premises insured against loss by fire for a sum named for the benefit of the mortgagee, and that in case of his default so to do the mortgagee might procure such insurance at the cost of the mortgagor. The defendant claimed upon the appeal that the mortgagee was a necessary party to the action.

*Held*, that the objection was untenable because: (1.) The defendant had not set it up in the answer; and (2.) The defendant could not raise the objection so long as it did not appear that the mortgagee had made any claim upon the moneys, or that he was not willing to forego all equitable claims thereon.

It was conceded upon the trial that the buildings were set on fire, and evidence was given tending to show that this was done with the plaintiff's knowledge and consent. A witness was called by the defendant and allowed to testify as to admissions made to him by the plaintiff before and after the fire, tending to show that he had procured some person to start the fire. On his cross-examination he was asked if he did not say to a person named, at a given time and place, that the fire was an honest one, that the plaintiff was very unfortunate and that he ought to have his money.

*Held,* that the plaintiff was properly allowed to call the person named and prove by him that the witness had made the statement to which his attention had been so called.

APPEAL from a judgment, entered upon a verdict in the plaintiff's favor, and from an order of the Oneida Special Term, denying the defendant's motion for a new trial.

This action was brought upon a policy of insurance issued by the defendant on the 11th day of June, 1879, to the plaintiff John Woodward, in the sum of $2,925, upon his dwelling-house and furniture therein, and upon his three barns and produce therein, and wagons, sulky and farming utensils. The premium paid was twenty-one dollars and ninety-four cents and was inserted in the policy as a gross sum. The dwelling-house and each of the barns was separately valued, and so was the farm produce, household furniture, wearing apparel, farming utensils, wagons and sleighs. On the fourteenth of July, following, the dwelling-house and barns were totally destroyed by fire, and the furniture, wearing apparel, stores, produce, farming utensils, wagons, sulky, sleighs and harness, were damaged and in part destroyed. At the time the policy was issued the plaintiff Margaret Evans held a mortgage on the premises upon which the buildings were located, to the amount of $500, which remained unpaid at the time of the fire. In the body of the policy there was a clause that the loss, if any, should be payable to Margaret Evans as her interest may appear.

The defendant's answer did not deny any of the allegations set forth in the complaint, and the verdict was for the sum of $2,289.39 with interest. There was no dispute as to the value of the property or extent of the loss. The grounds upon which the defendant seeks to reverse the judgment, are separately set forth in a bill of exceptions.

*Edward C. Jonnes,* for the appellant.

*S. C. Huntington,* for the respondents.

BARKER, J.:

We understand from the bill of exceptions that the assured, John Woodward, was the owner in fee of the premises upon which the buildings were situated. It is not therein stated specifically that such is the fact, but it is manifest that the trial was conducted upon the assumption that such was his title. The policy states that $1,200 of the insurance was on his frame building, occupied as a dwelling.

The complaint alleges that the property covered by the policy was the plaintiff's, and that he had an interest as owner therein. The third paragraph of the complaint avers, " that at the time of making said insurance and from then until the fire, the plaintiff had an interest in the property so insured as follows: The plaintiff, John Woodward, as *owner of said property*, and the plaintiff, Margaret Evans, as mortgagee of the buildings so insured, and the lands and the premises upon which they were situated * * * amounting in all to more than and exceeding the sum of $2,289.93."

None of these allegations are denied. We shall therefore dispose of all the questions presented for our consideration, upon the supposition that the assured, had a legal title in fee simple to the land upon which the buildings were located. The policy contains these clauses, viz.: " If the interest of the assured in the property whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, is not truly stated in this policy, then, and in every such case, this policy shall be void."

" If the interest of the assured in the property shall be any other than the entire unconditional and sole ownership of the property, for the use and benefit of the assured, or if the building insured stands on leased ground, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void."

At the time the policy was issued the premises were subject to a mortgage executed by the assured, as mortgagor, to one Otis Vandewaker, for the sum of $1,361. This lien was not expressed in the written part of the policy, and the defendant insists that it was wholly ignorant of the existence of the same, and for that reason the policy was void by the terms of the condition last above quoted. The interest of the assured in the land being in fee, the condition was not broken by reason of the omission, on his part, to disclose

the mortgage lien. He was the sole owner, his title was uncondi- tional and he held the same for his sole use and benefit. The word "ownership," as used in this connection, is synonymous with the word title. The popular definition of the word owner, as given by lexicographers, is the right to own; exclusive right of possession; legal or just claim or title; proprietorship. The interest of the assured in the real estate being entire did not call for any affirmative statement as to mortgage liens, to avoid a breach of the condition. It was only in case that his share or part in the thing assured was less than the whole, that he was called upon to state his interest. In common parlance the word interest is used to indicate the share, portion or part one has in a piece of property either real or personal. (*Merrill* v. *Agricultural Ins. Co.*, 73 N. Y., 456.)

The owner of the equity of the redemption in real estate may be described as owner. (*Washington Ins. Co.* v. *Kelly*, 32 Md., 421.) The mortgagee is not an owner, he has a lien on the title and that is all. The mortgagor may sell or convey the property and give the purchaser a title. (*Manhattan Fire Ins. Co.* v. *Wiell & Ullman*, 28 Grattan [Va.], 389.) In the preceding clauses of the policy, the assured had declared, in substance and effect, that he was the sole owner of the house and buildings, and this latter clause was inserted for the manifest purpose of declaring the contract void, if the fact concerning such ownership was less or different than represented in the previous statement. The fact that the Vandewaker mortgage was not represented to the company and expressed in the written part of the policy did not work a forfeiture. A mortgage on real estate is not, in a legal sense, an alienation of the property. It is only a lien on the lands as a security for a debt. The mortgagor remained the sole and unconditional owner of the land. The mortgagee was the sole owner and proprietor of the debt secured by a lien thereon. (*Conover* v. *The Mutual Ins. Co. of Albany*, 3 Denio, 254; S. C., 1 Comst., 290; *Jackson* v. *Mass. Mutual Ins. Co.*, 23 Pick., 418; *Savage* v. *Howard Ins. Co.*, 52 N. Y., 502.) The cases cited on this point by the learned counsel for the defendant do not support this argument.

In *Savage* v. *Howard* (*supra*) the condition was: "If the prop- erty be sold or transferred, or any change takes place in the title or possession * * * without the consent of the company indorsed

thereon, the policy shall be void." The policyholder conveyed his title to the property in suit, and it was held that it worked a forfeiture of the policy under the clause therein which has been quoted. One of the other cases cited is *Lasher* v. *The St. Joseph Fire and Marine Insurance Company* (86 N. Y., 424). In this case the assured procured a policy " on her household furniture contained in a hotel." She had no title to the property, it being in her possession under an executory contract for the purchase of the same, containing a stipulation that the title should remain in the seller until the price was paid. The policy contained a provision that it should be void if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, was not truly stated in the policy, and it was held by the court that as she was not the owner, she had not stated her interest in the property truly, and the contract was void for that reason. The court also held that a condition contained in a policy, such as the one then under consideration, without any representation as to title or any statement of specific interest, of the assured, amounts to a declaration on the part of the assured that his interest is an absolute one.

We have endeavored to show that the assured in this case had a legal title to the property, and was the sole owner of the same and that the mortgage lien thereon did not diminish his interest in the real estate. If the terms of the condition had been embraced in the form of a question to the applicant, as to the interest which he had in the property to be insured, and his answer had been that he was the sole, entire and unconditional owner, his ownership of the fee would have verified the truth of his answer.

If this is not the proper construction to be placed on the condition and a breach of warranty is made out, then we think the bill of exceptions states other facts which in law constitute a waiver of the condition so far as the Vandewaker mortgage is concerned. It is stated in the bill of exceptions " that the plaintiff gave evidence tending to prove that Howell and Upton, the defendants' insurance agents, had been informed of and knew of the existence of the said Vandewaker mortgage before and at the time of issuing the policy in suit; but no evidence was given tending to show that the existence of said mortgage was mentioned at or about the time of

the issuing of the said policy." In short, this means that when the policy was issued the agents knew the fact that this mortgage incumbrance existed, and they had the same in mind when they delivered the contract and received the premium, but Woodward, the assured, did not at that time mention the circumstance. Having knowledge of the lien derived before the policy was issued, and having it actually in mind when it was delivered, it is as binding on the company as if Woodward had communicated the information, pending the negotiations.

The general doctrine that the knowledge of the agent is the knowledge of the principal is not and cannot be doubted. This proposition has been applied in many cases and under various circumstances.

In *Holden* v. *New York and Erie Bank* (72 N. Y., 286) the rule was directly under consideration, and the court, in speaking of the knowledge of a fact on the part of the agent, said: "Hence, as a matter of law, whatever notice of facts he had in any capacity, which were material in the performance by him on the part of the bank in any transaction became notice to the bank, his principal, as it was his duty to give it notice thereof in that matter. It is the rule that the knowledge of the agent is the knowledge of his principal and notice to the agent of the existence of material facts is notice thereof to the principal, who is taken to know everything about a transaction which his agent in it knows."

If knowledge of a material fact be acquired by the agent previous to the transaction wherein he acts for his principal, and the fact is in the mind of the agent when he performs the act or transacts the business in question, then as to all parties concerned it is, in legal effect, the same as if the information was communicated to the agent at the time. The learned counsel for the defendant contends that the rule is that the notice must come to the agent while he is engaged for the principal, and in the course of the very transaction in question. The rule has been laid down in some of the cases as contended, but the more recent decisions do not limit the rule so much as the argument claims, but support the one which we have already stated. In speaking of the rule and its application the court, in *Hoover* v. *Wise* (91 U. S., 308), remarked : "It must, however, be knowledge acquired in the transaction of the business of his prin-

cipal, or knowledge acquired in a prior transaction *then present to his mind,* and which could properly be communicated to his principal."

In *The Distilled Spirits* (11 Wall., 356) the rule was stated, namely, " that notice to the agent is notice to the principal applies not only to knowledge acquired by the agent in the particular transaction, but to knowledge acquired by him in a prior transaction and present to his mind at the time he is acting as such agent, provided it be of such a character as he may communicate to his principal without breach of professional confidence."

The rule as stated in these cases was applied in the case of *Holden* v. *New York and Erie Bank* (*supra*). The agents of the defendant had knowledge of, and it was in their mind when this contract was concluded that the lien existed on the lands, there is no sense or reason in saying that because they did not have the fact repeated to them while writing out the policy their principal is not bound by the information. (*Dresser* v. *Norwood*, 17 Common Bench [N. S.], 466.) By reason of the fact that the company knew when the policy was issued that the mortgage lien existed, it is to be inferred that the company waived the condition as far as that particular incumbrance was concerned. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y., 434; *Richmond* v. *Niagara Ins. Co.*, 79 id., 230.)

It appears that a part of the personal property was subject to a chattel mortgage given by the assured to the same Giles Vandewaker as mortgagee, which was outstanding at the time the policy was issued, and there was unpaid thereon the sum of $160, the existence of this mortgage was not made known to the defendant or any of its agents. The terms and condition of this mortgage are not stated in the bill of exceptions, but in the written part of policy the property is mentioned as " his " (the assured) property. In this State the effect of a chattel mortgage is to convey the title of the property to the mortgagee, and thereafter the mortgagor's interest is that of an equity of redemption, and nothing more. (*Parshall* v. *Eggert*, 54 N. Y., 23; *Bragelman* v. *Daue*, 69 id., 69.) Therefore the interest of the assured in the personal property was not that of a sole, entire and unconditional ownership, and so much of the contract as related to that class of property was void by the very terms of the condition. The omission to disclose the true

interest of the assured in the personal property constitutes a breach of the warranty so far as it relates to the property incumbered by the chattel mortgage.

It is urged by the appellant that a breach of the terms of warranty in this particular works a complete forfeiture of the entire contract, and for that reason the plaintiffs are not entitled to recover anything on the policy. The solution of this proposition depends upon the question whether the contract is entire or several. It is now well settled that contracts of insurance are severable in their character when a separate valuation has been placed on the different articles, pieces or classes of property, although a gross sum has been fixed as the premium to be paid for the entire property. (*Merrill* v. *Agricultural Ins. Co.*, 73 N. Y., 452.)

The contract of warranty as to so much of the personal property as was mortgaged was broken for the reason that the assured had not the legal right thereto, and he failed to disclose his true interest therein; the plaintiff cannot recover for the loss sustained thereon.

As to the articles embraced in the policy and not mortgaged, and upon which a separate valuation was placed therein, the contract is separate in its character; the plaintiffs were entitled to recover for so much of it as was destroyed. All the personal property insured was not embraced in the chattel mortgage, but it is impossible from the evidence and statements contained in the bill of exceptions to designate with certainty the articles mortgaged.

Assuming that all the goods mentioned in the policy, which are of the same kind or class as those mentioned in the mortgage, and regarding them as embraced therein, and adopting the valuation placed thereon in the policy, the total value of such articles is $400. If all the goods mortgaged were destroyed by fire then there may have been included in the verdict the sum of $400 for loss on goods, for which the plaintiff is not entitled to recover for the reason stated.

In the Vandewaker real estate mortgage there is an insurance clause by the terms of which the mortgagor agreed to keep the buildings standing on the premises insured against loss or damage by fire for a sum not exceeding $1,300 for the benefit of the mortgagee, with a provision that in default thereof it should be lawful for the mortgagee to effect such insurance in his own behalf

at the expense of the mortgagor. The defendant made the point on the trial and now insists that Vandewaker was a necessary party to the suit, and for that reason the verdict cannot be upheld. There are two good and sufficient answers to this proposition and one is, that it was not set up in the answer that the mortgagee was a necessary party, and the objection is therefore waived. (Code of Civil Proc., §§ 488, 498, 499; *De Puy* v. *Strong*, 37 N. Y., 372.)

The agreement relating to the insurance for the benefit of the mortgagee is wholly executory, and as it does not appear that the assured has transferred the policy to Vandewaker, the latter has no legal title to the moneys due thereon. And further it does not appear that the mortgagee has made any claim whatever that the moneys due upon the policy should be paid to him, and for this reason the case is not within the rule laid down in *Cromwell* v. *Brooklyn Fire Insurance Company* (44 N. Y., 42), or either of the other cases cited by the defendant on this point. It may well be that the mortgagee is willing to forego all such equitable claims as he may have, as between himself and the mortgagor, to the moneys due on the policy rather than be made a party to this litigation. Until he gives notice to the insurance company that he lays claims to the moneys, it can legally discharge all its obligations on the policy by payment to the plaintiffs in this action.

The other questions presented by the bill of exceptions relate to the reception and rejection of evidence. It was admitted that the fire was of incendiary origin. Upon the question of the complicity of the plaintiff Woodward, in setting the same, the testimony was conflicting. To prove the plaintiff's' complicity the defendant called as a witness Lorenzo D. Harding, who testified, in substance, that some ten days before the fire, Woodward called upon him at his house, and stated to him that he had got to burn his buildings, and there was no other way out of his financial troubles, and asked the witness to do it on the evening of the day on which the conversation was had, that he had made arrangement for firing the buildings and instructed the witness where and how to apply the match, giving the details of what he had done in preparing combustible material for that purpose, and describing to the witness how he could make an escape from the premises and not be detected. Harding declined and Woodward then told him that if he ever disclosed the request which had

been made of him he would kill him. The defendant offered to prove by the same witness that on an occason prior to the time when Woodward asked him to burn the buildings, Woodward's wife told the witness, that her husband was going to burn the buildings, and that he had requested her to do it, and that she declined. This was objected to by the plaintiff as incompetent and the objection was sustained. This we regard as mere hearsay evidence and it was properly excluded. With a view of making the evidence competent, the defendant proved that after Mrs. Woodward made the statement to the witness, he had a conversation with Woodward about Woodward's wife separating from him and leaving his home at that time; the witness told Woodward that if his wife did leave him it would injure his case with Cummings, and added the further remark : " This other thing that you have gone into." The witness also testified that at the time Woodward asked him to burn the buildings he remarked that he should not have come to him for that purpose, but " I know my wife has told you."

The defendant admits that this evidence was not competent as proof of the truth of the facts stated by Mrs. Woodward to the witness, but as proof of what Woodward's wife had told the witness, and which Woodward knew, and for that reason he was induced to approach Harding with a solicitation to burn the building. We think it would be a mere conjecture to say that the remarks made by Woodward that he was conscious that his wife had had a conversation with the witness of the nature and character of that offered to be proved, and for that reason he was induced to persuade the witness to burn his buildings. It fails to support, in any legitimate way, the witness in his evidence that Woodward applied to him to do the incendiary act.

The defendant gave evidence tending to prove that the fire was in fact set by one Charles Coates, an employee of Woodward, and with his knowledge and by his procurement. The witness Harding testified that he was at Woodward's house the morning of the fire and had a conversation with Woodward concerning the same, that Woodward said to him, " how is it." The witness replied : "Well they mistrust you, you might know they would by these circumstances and this man Coates around here." Woodward then replied : "They do not unless you have said something." . The witness then said :

"that he had not said anything and Woodward appeared excited." The witness started to leave when Woodward followed him and they had a further conversation, in the road near by, where the buildings had stood. The witness testified that Woodward then said : " I know what ails you, you are mad because I got Coates to do it," and added," if you ever lisp a word I will fix you."

On his cross-examination Harding was asked, if he did not say to John Lobdell, at a certain time and place, which were mentioned, "that Woodward's fire was an honest one and that he was very unfortunate and ought to have his money," and he answered, " he had no recollection of saying any such thing."

The plaintiff then called John Lobdell and he was asked the question : " Did Harding say to you, on the occasion referred to, in substance, that Woodward's fire was an honest one and that he was very unfortunate, and that he ought to have the insurance money, or that in substance." The defendant objected to the evidence as immaterial and incompetent, the same was overruled and the witness replied : " I think he used the words."

If the evidence which Harding gave is true, it amounted to an admission by Woodward, that the fire was set by his procurement and that Coates did it. The statement made to the impeaching witness by Harding is wholly inconsistent and irreconcilable with the evidence which he gives in court. If we are correct in the view which we take of the object and purpose of the defendant in introducing the statements of Woodward, made after and on the morning of the fire, then the impeaching evidence was properly received and no rule of evidence violated.

In *Schell* v. *Plumb* (55 N. Y., 592) the action was on an alleged oral contract by the defendant to support the plaintiff. The witness called by the defendant testified to admissions made by the plaintiff in substance and effect that no contract for the support of the plaintiff had ever been made by the defendant.

On his cross-examination he denied, that he had ever said the plaintiff ought to have $1,000 from the defendant. The proper foundation being laid the plaintiff was permitted to prove by way of contradiction and impeachment of the witness that he had so said. The same point was made there, which the defendant makes here, that the statements of the witness Harding, out of court, was the

mere expression of an opinion on the merits of the controversy, and for that reason should have been excluded. It was held, however, in the case cited, that the evidence was equivalent to a declaration that a contract had been made. We think, in this case, the evidence received was competent, as being a statement by Harding, made out of court, that Woodward never made the admission as to which he testified on the trial.

On the plaintiff's stipulating that the judgment may be modified by deducting therefrom the sum of $400 with interest thereon, from the 30th day of July, 1879, the same is affirmed as modified, without costs to either party.

If such consent is not given, the judgment is reversed and new trial granted, with costs to abide the event.

SMITH, P. J., and HARDIN, J., concurred.

So ordered.